## HARDWICK BROTHERS *vs.* KIRWAN & TYLER.

*Agency—Contract Made by a Special Agent in Excess of Authority.*

A principal is not bound by a contract made in his behalf by a special agent, in excess of the authority conferred, unless he subsequently ratifies it.

Defendant's special agent was authorized to sell goods to plaintiff for cash on delivery, which was to be made at a certain time, on vessels to be furnished by plaintiff.   This agent made a contract which provided for the shipment of the goods by the principal to plaintiff in another State, and that "interest is to be charged for delayed deliveries at the rate of six per cent."   When this contract was submitted to defendant he said that he did not understand one clause, and would write plaintiff about it.   He did write repudiating the contract so made and submitted another one which plaintiff refused to sign, and sued for breach of the contract so made by the agent. *Held*, That since the agent's contract was materially variant in terms from the authority conferred on him, the defendant was not bound, and that his subsequent conduct did not show any ratification.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, SCHMUCKER and JONES, JJ.

*Richard C. Mayo,* for the appellants.

While this case was decided on the ground that the 17th section, Statute of Frauds, had not been complied with, the prayer is so worded as to embrace other points, and the case will therefore be argued on the following grounds : (1.) As to the question of the Statute of Frauds.  (2.) As to the authority of the agent to bind his principal.  (3.) As to the question of ratification by the principal of the acts of his agent.

1. The memorandum contains the names of the sellers and the names of the buyers—the commodity and the price, the time of delivery.; and while it does not state the place of delivery, it does say *via* schooner, which means at the usual place of delivery of the seller of goods shipped *via* schooner.    It is not necessary that the memorandum should contain either the time or place of delivery.  *Salmon Falls Manufacturing Co.* v. *Goddard,* 14 Howard U. S. 455.  In *Allen* v. *Bennet,* 3 Taunton's Rep. 169, the memorandum was as follows : " Ordered of H. & G. Bennet, Liverpool, fifty barrels of fine new rice, 33s.   Two months and two months, as per sample in running numbers.   August 22rd, 1809.   W. Wright."

LORD MANSFIELD, in delivering the opinion of the Court, said : " The defendant's counsel distinguishes between an order and an agreement to buy ; but if I go to a shop and order goods, do not I agree to buy them ?"    See also *Newell* v. *Radford,* L. R. 3 Common Pleas, 52.   A letter repudiating a contract may be so worded as to furnish a sufficient note or memorandum to satisfy the statute.  *Benjamin on Sales,* 7th ed. sec. 252; *Drury et al.* v. *Young,* 58 Md. 551–555.

2. Assuming that Summers had no authority to incorporate the interest clause in the contract, does that render the whole contract void ?   He did have authority to make the balance of the contract, *i. e.* to sell 15,000 cases of cans at $1.47 ½ per 100 cans, net cash, and 15,000 cases at eight cents each, less three per cent for cash, and to make them

deliverable to the schooner on June 1st.   He has done that.
He has fully executed his authority when he has placed the
defendants in a position to deliver all the goods on June
1st.   The contract says one delivery or all to be made
June 1st.   The defendants then are placed in the position
he was told to put them in.   By delivering all the goods
on June 1st, they could demand their money on that day,
and thereby render the interest clause inoperative.   This
interest clause is a condition subsequent, to go into effect
*only* upon the failure of the defendants to live up to a con-
tract they had authorized their agent to make.   It is a pro-
tection to them.   A principal cannot repudiate a contract
made by his agent when it enures to his benefit rather than
to his detriment.   *Story on Agency*, sec. 168; *Livermore on
Agency*, 97.

The law does not require that the agent shall use any
special terms or provisions in making a contract in order to
bind his principal.   The sole question is whether or not his
liability is changed.   If after the contract is made, the
principal's liability remains unchanged, it matters not what
the terms and words used in the contract may be.   1 *Par-
sons on Contracts*, 60; *Simonds* v. *Clapp*, 16 N. H. 222.

The agent was told to make the goods deliverable June
1st.   This he did, but added another clause in regard to
interest which made the defendants liable if the goods were
not delivered by June 1st.   It is not every act of the agent
done in excess of his authority that vitiates his contracts
with third persons.   Regularly, says LORD COKE, where a
man doeth that which he is authorized to do, and more,
there it is good for that which is warranted, and void further
risk."   *Co. Litt* 258A.   This doctrine of LORD COKE has
been adopted by the leading text-writers on the subject of
agency, as well as by the Supreme Courts of many of the
States of the Union, and England.   See *Story on Agency*,
9th ed. sec. 166; *Mechem on Agency*, sec. 414; *Ewell's Evans
on Agency*, sec. 170; *Livermore on Agency*, p. 101.

In *Hammond* v. *Michigan State Bank*, 1 Walker's Chan-

cery, 214, the Court says : "The legal principle to be deducted from these cases is this : That where an agent, acting within the scope of his authority, does a thing which standing alone and by itself would be binding on his principal, and at the same time, does something more, which he was not authorized to do, and the two are not so interwoven with each other that they cannot be separated, but constitute different parts of the *same* contract, that which the agent was authorized to do is binding on his principal, and that *only* which he was not authorized to do is void." See also 2 *Greenleaf on Evi.*, sec. 59; *Vanada* v. *Hopkins*, 1 J. J. Marshall, 285; *Smith* v. *Tracy*, 36 N. Y. 85; *Jessup* v. *City Bank*, 14 Wis. 331. The result, therefore, is that the plaintiffs have the right to enforce only that part of the contract which was authorized, and the contract should be regarded as though the interest clause had never been incorporated in it.

3. The defendants ratified the contract except as to the interest clause. A ratification in part of a contract made by an agent operates as a ratification *in toto*. *Maddox* v. *Bevan*, 39 Md. 494; *Story in Agency*, sec. 250.

*Joseph C. France*, for the appellees.

The contract which the appellees authorized the broker to make was plain and simple and one in which the penalties fixed by law for non-delivery and non-acceptance are known and acceptable to the business community. The appellees had the right to reject the substitute offered, (*a*) because it was a material variation ; (*b*) because it was incomplete—required oral explanation. What was meant by "one delivery or all to be made June 1st?" Where were deliveries to be made? How long could "delayed delivery" go upon payment of six per cent per annum interest? Interest on what? (*c*) because the contract as drawn contains no promise or obligation on the part of the appellants to take or pay for the goods and was not enforceable against them ; (*d*) because, even if the variation was immaterial

and in effect imposed on the appellees a less penalty for breach than that affixed by law, nevertheless it was still the right of the appellees to insist upon the known and customary form of the " bought and sold " contract and repudiate the broker's misguided, if well-meant clause of " protection " as a possible (and it proved to be an actual) breeder of litigation.    Even to a can-maker is it permitted *stare super vias antiquas.*

JONES, J., delivered the opinion of the Court.

This case was instituted in the Superior Court of Baltimore City by the appellants, who were plaintiffs below, against the appellees, defendants below ; the cause of action being the breach of an alleged executory contract.    The declaration contained the common counts and in addition a special count which is as follows : " And for that the defendants sold to the plaintiffs on the tenth day of May, in the year one thousand eight hundred and ninety-eight, 15,000 cases of three-pound fruit cans (cases to contain two dozen each), at $1.47½ per 100 net cash, and 15,000 cases (to contain said cans), at eight cents per case, less three per cent discount for cash.    One delivery or all to be made on June 1st.    If all are not delivered on June 1st, interest to be charged for delayed delivery at the rate of six per cent per annum.    And that the plaintiffs fully complied with every requirement of the said contract to be performed by them, and were ready and willing to receive said cans and cases in accordance with the said contract, but that the defendants wholly failed to comply with the said contract and refused to deliver the said cans and cases to the plaintiffs, whereby the plaintiffs suffered great damage."    To this declaration the defendants pleaded, first, that they were never indebted as alleged ; and secondly, that they did not promise as alleged.    Under the issues joined upon the pleas the plaintiffs at the trial below offered their proof, at the conclusion of which the defendants, without any offer of proof on their part, asked from the Court the following in-

struction : " That the plaintiff has offered no evidence legally
sufficient to charge the defendants upon the cause of action
upon which this suit is brought, and the verdict of the jury
should be for the defendants." This instruction was granted
and the plaintiffs excepted to the action of the Court below
in granting the same. The exception which thus calls upon
us, upon the appeal of the plaintiffs, to pass upon the pro-
priety of this action of the trial Court is the single one
which the record contains. To determine the correctness
of the ruling which is the subject of this exception renders
necessary first an examination of the evidence which the
plaintiffs submitted. They first proved by one Charles B.
Summers that on the morning of the 10th of May, 1898,
he was informed by one Sidney Bailey, that Selby B. Hard-
wick, one of the plaintiffs, was in Baltimore for the purpose
of purchasing for cash and immediate delivery fifteen thou-
sand cases of tin cans for use in packing tomatoes during
the next ensuing season ; that he (Summers) posted him-
self elsewhere as to market quotations, and then called on
the defendants, Kirwan & Tyler, who were manufacturers
of tin cans, and received from Kirwan authority to sell fifteen
thousand cases (two dozen each) of three-pound tin cans at
$1.47½ per one hundred cans, and wooden cases for hold-
ing said cans at eight cents each, less three per cent for
cash, and that he was told by Kirwan that he could make
the cans deliverable up to and including June 1st, 1898.
This witness further proved that he was not a licensed
broker, but was a general manufacturers' agent and had
previously made a number of small sales for Kirwan &
Tyler, " but as this was a special article Mr. Kirwan wrote
the quotations on a slip of paper and gave it to the witness,
stipulating to pay the brokerage of one and a half per cent ;"
that in the conversation at the time quotations were given it
was understood that the purchaser was to provide schooners
for the cans at Baltimore ; that a schooner-load is about
five thousand cases and cans, and that the purchase price
was to be paid in cash on delivery to the schooner. He

then further proved that on leaving Kirwan he went to the hotel where Hardwick was stopping and saw Hardwick for the first time; that Bailey was also present; and that he then drew up in duplicate a contract of sale which was signed by Hardwick for the plaintiffs and by him (Summers) for the defendants and produced the contract, which was in the words and figures following:

" C. B. Summers, No. 110 W. Fayette street, Baltimore, Maryland, Order No. ——, date May 10th, 1898. Messrs. Kirwan & Tyler, ship to Hardwick Bros. at Kinsale, Virginia, via schooner, 15,000 cases, 3℔ fruit cans of 2 dozen each at $1.47½ per 100 net cash; 15,000 cases at eight cents, less 3 per cent cash.

" Deliveries: One delivery or all to be made June 1st. If all are not delivered on June 1st interest to be charged for delayed delivery at the rate of six per cent per annum." The witness further proved that on the next morning, May 11th, he handed to Kirwan his copy of the contract, who, after reading it over carefully, said: " I suppose that it is all right, leave it with me; I believe there is one clause there I don't understand; that is the interest clause; I will write to Mr. Hardwick to define it." He left the contract with Kirwan and saw him again on the 16th or 17th ot May, when Kirwan told the witness he had not yet heard from Hardwick, to which witness replied that there had not yet been time. On the same day the witness heard from Hardwick and saw Kirwan and told him that Hardwick expected him to live up to the original contract, and Kirwan said witness did not know the tricks of the trade; that the prices of cans were rising when the original contract was made on May 10th, and went up the next day and kept rising, and on June 1st, 1898, the price of cans had gone up to $1.75 per one hundred and cases to nine cents. On cross-examination the witness said that " while nothing was said in his conversation with Kirwan on May 10th about interest and his authority was limited to selling for cash, deliveries to be made any time up to June first, inclu-

sive, he had, inasmuch as it was, in his opinion, beneficial to both parties, considered that he had authority to incorporate the interest clause in the contract," and gave his reasons for the opinion that the said clause was beneficial to both parties. The plaintiffs further proved by Vincent Hardwick, one of the plaintiffs, that he came to Baltimore on the 31st day of May, 1898, and called upon Kirwan & Tyler and made a demand for the cans, and that Kirwan told him he had consummated no contract, and refused to deliver; that he (Hardwick) was ready to take all or part of the cans, and had money to pay for them. On cross-examination this witness admitted that the plaintiffs received from the defendants on May 11th, 1898, the following letter:

BALTIMORE, MD., May 11th, 1898.

"We have received from C. B. Summers contract for 15,000 cases 3℔ cans at $1.47½ net cash, deliveries to be made on or before June 1st. The other condition of the contract that all cans not delivered on June 1st are to bear interest after that date is not satisfactory to us. If you wish to sign and return the enclosed contract it will be satisfactory to us, but we cannot possibly give you any other terms than specified in the contract enclosed. The way the other Potomac River people do is to send their money with the schooner when she goes after the cans, and we suppose will be agreeable to you. Kindly let us hear from you by return boat or send the schooner at once and we will load her up. We will hold the contract signed by you and Mr. Summers until we hear from you or return as you may prefer.

(Signed), KIRWAN & TYLER."

The contract referred to as having been enclosed in the foregoing letter was as follows:

"Contract: We have this day bought of Kirwan & Tyler, Baltimore, Md., 15,000 cases of 3℔ peach-hole cans at $1.47½ per 100; cases for same 8c. each less 3 per cent discount, for immediate shipment, complete delivery to be made not later than June 7th. All cans not delivered on

or before June 7th to be paid for cash at that time or can-
celled at their option.    Terms, net cash as delivered."    In
connection with the testimony of this witness it also ap-
pears from the record that the plaintiffs received from the
defendants a letter dated May 17th, 1898, as follows : " We
sent you last Wednesday for signature, contract covering
15,000 cases of cans, and as we have received no reply
from you we take it for granted that you have decided not
to accept.    We have, therefore, returned the original con-
tract to Mr. Summers, and remain, etc."    The plaintiffs
made no response to either of the letters of the defendants
herein set out.    The plaintiffs also proved by one " Syd.
Bailey" that he was present when the contract offered in
evidence by the plaintiffs was signed and witnessed it ; and
that Hardwick told Summers to make the contract as bind-
ing as possible, because he had had some dealings with the
defendants, &c.    This was said " in reference to the interest
part of the contract, and it was further said that if the cans
were not delivered Kirwan & Tyler were to pay Hardwick
the interest for the non-performance of the duty; that was
the way witness understood it."    On the first of June,
1898, as appears from the record, the plaintiffs again made
demand on the defendants through a representative for de-
livery of the cans and the defendants said they were not
bound by the contract.    With this the plaintiffs closed their
case ; and it was upon this state of proof that the trial
Court upon the application of the defendants granted the
instruction which is now the subject of our consideration.

It is perfectly obvious that in the proof which the plain-
tiffs submitted as herein set out, they showed no ground
for recovery upon any of the common counts ; and testing
the proof by one or two very plain and simple principles of
law it will become equally obvious that they have shown no
such ground under their special count.    The first step to
be taken by the plaintiffs was, of course, to establish the
existence of the contract for breach of which they were
seeking to recover.    This they attempted to do by show-

ing that Summers acting on behalf of the defendants and as their agent, made with them (the plaintiffs), the contract under which they claim. Now the proof shows very clearly and the plaintiffs have argued the case upon the assumption and without denial, that, Summers, in acting for the defendants, was a special agent employed for the particular transaction with a limited authority, and was under instructions as to the terms of the contract he was authorized to make. In order to bind his principals, therefore, he was required to observe the limits of his authority and to conform to the instructions given; otherwise what he did was not binding on them. The plaintiffs were bound to inquire as to and to know the nature and extent of his authority, and dealt with him at their peril. This principle of the law of agency has been stated by this Court, CHIEF JUSTICE ALVEY, speaking for the Court, in this way: " The authorities are numerous to the effect that in the case of a special agent the principal cannot be bound without or beyond the authority delegated to him; and if an agent be acting under such special authority, whether written or verbal, the party dealing with him is bound at his peril, to inquire into the nature and extent of the agent's authority, and to understand the legal effect of it; for if he fails to inform himself as to the nature and extent of that authority, and it be exceeded by the agent he must abide the consequences ; the principal will be in no manner bound," *Equit. Life Assurance Soc.* v. *Poe*, 53 Md. 28. Recurring to the proof we find that the defendant's agent here, instead of pursuing the authority given him and making a contract with the plaintiffs according to the terms prescribed for him, undertook to make one very materially variant from those terms by inserting at the instance of one of the plaintiffs, acting for his firm, what is spoken of in the evidence as the interest clause. This obscurely phrased stipulation was designed, according to the construction which the evidence shows was put upon it by the plaintiffs, to impose upon the defendants what might have proved a very embarrassing and

vexatious condition in view of what Summers testified to in regard to the understanding to be had as to how the goods which he was to sell to the plaintiffs were to be delivered. These goods were to be shipped " *via* Schooner " according to the contract as it was prepared by Summers. According to the understanding he had with the defendants when he received his authority to sell the goods, the vessels to receive them were to be furnished by the plaintiffs at Baltimore. This was omitted from the contract, while by the introduction of the interest clause a penalty was prescribed for the failure of the defendants to deliver the goods by a definite time. In other words, the contract as made for them did not secure to the defendants the right to insist upon the plaintiffs having the vessels ready to receive the goods at the place of delivery, but imposed upon them unconditionally the duty to deliver the goods *via* schooner by a fixed time, subject to the penalty which the contract prescribed. Very clearly the defendants were not bound by a contract so materially variant in its terms from the one they had authorized, unless they choose to adopt and ratify it after it was presented to them. This the plaintiffs claim the defendants did through the action of Kirwan, when the contract was handed to him by Summers. We cannot so hold upon the evidence upon which the plaintifis rely on this point. When the memorandum of contract was handed to Kirwan by Summers, the former said : " I suppose it is all right, leave it with me ; I believe there is one clause there I don't understand, that is the interest clause ; I will write to Hardwick to define it." So far from this language indicating an adoption of the contract proposed, it indicated very clearly a purpose not to adopt it without further consideration ; and when it was followed on the same day by the letter to the plaintiffs which has been quoted, in which the defendants distinctly repudiated the contract in its then form, the refusal to ratify was as distinct and emphatic as it could well be made. The plaintiffs further insist that though the interest clause was added without authority, the con-

tract with that stipulation omitted was within the authority of the agent, and it is *pro tanto* binding upon the defendants, and a number of authorities are cited upon this point which are illustrative of a principle that has no application in such a case as this.

As has been seen, the plaintiffs sue here for the breach of a purely executory contract. If they show the existence of the contract upon which they sue and a breach of it they establish a right to recover. If they fail in either respect they cannot recover. They claim to have made with the defendants a particular contract. They refused to reopen negotiations with the defendants for a new contract, or to abate anything from the one they claim to have made when informed by the defendants that the latter would not consent to be bound by the contract as prepared by Summers, the agent. They insisted upon the same contract when they informed the defendants through Summers that they, the defendants, would be expected " to live up to the original contract," and when upon two occasions they subsequently made demand on the defendants for a delivery of the goods under the same contract. In doing this they repudiated the idea that there was any other or different contract from the one they claim to have made on the 10th May, 1898, with the defendants' agent, and this is the contract which they have with the defendants or they have none. The situation here as disclosed by the proof is this. The defendants authorized the agent, Summers, to propose to the plaintiffs a certain contract. The plaintiffs did not accept the proposition so made, but in turn made to the defendants, through the same agent, a proposition for an essentially different contract, which the defendants refused to accept and then withdrew the offer they had previously made and offered to the plaintiffs other and slightly different terms, which they had a clear right to do. I *Story on Contracts*, sec. 490; I *Parsons on Cont.*, 491-2; *First National Bank of Flora* v. *Clark*, 61 Md. 400. This last proposition of the defendants the plaintiffs refused

to accept and indicated their purpose to insist upon the contract as it had been formulated by the agent, Summers, in conference with their representative. By this contract, as has been already said, the defendants are not bound. Upon the state of proof on the part of the plaintiffs it is quite clear that the transactions between them and the defendants, which they have made to appear in evidence in this case, never ripened into a contract because there was wanting throughout the mutual assent to a certain and definite proposition between the parties, which is the first essential to every contract. 1 *Story on Contracts*, sec. 490; 1 *Parsons on Cont.*, 491.

They therefore failed in the first step towards showing a ground for recovery under their pleadings. It is unnecessary to advert to other questions that were suggested and argued. It results from what has been said that the instruction granted by the trial Court which has been here the subject of consideration was proper and the judgment of that Court must be affirmed.

*Judgment affirmed.*

(Decided June 14th, 1900.)