# LINWOOD L. CLARK

*vs.*

# THE PEOPLE'S BANK OF SOMERSET COUNTY.

*Principal and Agent—Authority of Agent—Estoppel.*

Authority to lease a piece of property, and to find a purchaser therefor and submit his bid, does not confer on the agent power to give an option to purchase for a definite price, or to execute a written contract of sale.                p. 274

That the owner of land, in behalf of whom a lease was made by an agent, accepted rent under the lease, does not estop him from denying the authority of the agent to give an option of purchase to the lessee, the rent being accepted in ignorance of the option provision in the lease.                p. 273

*Decided March 17th, 1920.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., THOMAS, URNER, STOCKBRIDGE and ADKINS, JJ.

*Daniel C. Joseph* and *Linwood L. Clark*, for the appellant.

*Rufus W. Applegarth* and *Addison Mullikin*, with whom was *F. Stanley Porter* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City dismissing the bill of complaint of the appellant for the specific performance of an alleged contract for the sale of certain property in Baltimore City.

In June, 1918, a certain Charles E. Brownell and George A. Cox, alleged to be the agent of the appellee, the People's Bank of Somerset County, Maryland, executed the following agreement or lease:

"This Agreement, Made this........day of......, 1918, between The People's Bank of Somerset County, George A. Cox, Agent, Landlord, and C. E. Brownell, Tenant:

"Witnesseth, That the said Landlord hereby rents to the said Tenant the premises No. 4903 Ferndale Avenue, Howard Park, for the term of one year, beginning on the first day of July, 1918, and ending on the first day of July, 1919, at Six Hundred Dollars a year, payable in monthly installments of fifty dollars each in advance.

"And the said Tenant hereby covenants with the said Landlord to pay the rent as aforesaid, keep the premises in good order, and to surrender the peaceful and quiet possession of the same at the end of the said term, in as good condition as when received (the natural wear and decay of the property and unavoidable accidents excepted), and further, that the said Tenant will not do, suffer or permit anything to be done, in or about the premises which will contravene the policy of insurance against loss by fire; nor use, nor permit their use, for the purposes other than those of a family dwelling house, and will not at any time assign this agreement, or sublet the property thus let or any portion thereof, without the consent in writing of the said Landlord, or his representatives; and further, that whatever alterations or repairs the said Tenant shall be permitted to make shall be done at his own expense.

"It is further agreed, that if the rent shall be thirty days in arrears, the Landlord shall have the right to distrain for the same, and to re-enter and take possession; and if the Tenant shall violate any of the aforegoing covenants on his part herein made, the Landlord shall have the right, without formal notice, to re-

enter and take possession, and if the property shall be destroyed or rendered untenantable by fire or unavoidable accident, the tenancy hereby created shall be thereby terminated, and all liability for rent herein shall cease upon payment proportionately to the day of fire or unavoidable accident.

"And it is also further agreed, That this agreement, with all its provisions and covenants, shall continue in force from term to term after the expiration of the term above mentioned; provided, however, that the parties hereto, or either of them, can terminate the same at the end of the term above mentioned, or of any term thereafter, by giving at least thirty-seven days' previous notice thereof in writing.

"And it is further agreed, that the said Landlord will put in an adequate furnace so as to heat said premises, and the said Tenant shall have the right to build a garage on said premises at a place selected by the Landlord, or his agent, at the Tenant's cost and expense.

"It is further agreed, that the Tenant shall have the right and option to purchase the aforesaid premises for the sum of Seven Thousand Dollars ($7,000.00) at any time during the term of this lease. At the expiration of this lease, if said tenant desires, he may have the right to rent the premises, if not sold.

"In testimony whereof, the said parties have hereunto subscribed their names and affixed their seals the day and year first above written.

"C. E. Brownell. (Seal)

"Test: C. F. Hyde.

"The People's Bank of Somerset County, (Seal)

"Per Geo. A. Cox, Agent."

The lease was assigned to the appellant on the 4th of January, 1919, by the following endorsement thereon:

"Baltimore, Md., Jan. 4th, 1919.
"For value received, I hereby assign and transfer all my right, title and interest in the within lease to Linwood L. Clark.
"Witness my hand and seal this 4th day of Jan.
                              "C. E. Brownell."

On the same day George A. Cox wrote on the lease the following consent to the assignment:
"Assignment to Linwood L. Clark, approved Jan. 4, 1919.
                              "Geo. A. Cox."

The appellant, who went into possession of the property under the above assignment, testified that about the last of February or the first of March he made several offers to Mr. Cox to buy the property; that Mr. Cox told him that he had attempted to sell the property for $6,500.00, but that the bank had refused to accept the offer and that he thought the bank had made a mistake in not accepting it; that he, the appellant, was trying to get the property for less than $6,500, which was, in his opinion, its maximum value, but that he finally told Mr. Cox some time in May to submit to the bank an offer from him of $6,500.00 and that Mr. Cox said he would take it up with the bank; that on the 31st of May Mr. Cox served on him a notice to vacate the property on the 1st of July; that on or about the 1st of June he notified Mr. Cox that he would exercise the option in the lease on or before the 1st of July, and asked him for a reference to the title, which Mr. Cox gave him; that about the middle of June he prepared a contract for the sale of the property to him for $7,000.00 and took it to Mr. Cox for execution, and that instead of Mr. Cox signing it as agent for the bank as he expected him to do, Mr. Cox told him he would submit it to the bank; that Mr. Cox's actions on that occasion made him suspicious, and as he did not hear from Mr. Cox, he had his attorney, Mr. Wattenscheidt, write to the bank as follows:

"Baltimore, Md., June 20, 1919.
"People's Bank of Somerset Co.,
    "Princess Anne, Md.
"Gentlemen:

"Please advise me at once, as counsel for Linwood L. Clark, who is purchasing from you under option No. 4903 Ferndale Ave., Howard Park, in fee at $7,-000.00, when it will be convenient for you to execute deed of said property to him. He has already taken up this matter with you through your Baltimore agent, Mr. George A. Cox, but does not seem to get much satisfaction from him. The option under which Mr. Clark is purchasing expires on the first day of July, 1919; and the transfer must be made before that time unless you care to extend the time. Mr. Cox has informed Mr. Clark that you have redeemed the ground rent and are in a position at any time to execute the fee simple deed. I am going to start work on the title today and will be ready any time after the 25th to make title.

"Please advise me at once when and where you will execute said deed.

"Yours very truly,

"P. S.—My client advises me that he submitted contract of sale to your local agent, Mr. Cox, more than a week ago, but according to my information it has not been forwarded to you for execution."

The plaintiff also testified that there was no reply to that letter, and he alleges in his bill that it developed upon examination of the title to the property about the 27th of June that it was subject to a redeemable ground rent of $120.00 a year, and that the defendant was not, therefore, "in a position to execute an absolute deed," and that he telegraphed the bank as follows:

"Am your tenant Ferndale Avenue property, Baltimore. Lease gives option buy Seven Thousand Dollars in fee before July 1st. Submitted contract sale to Mr. Cox two weeks ago. Heard nothing since. Don't understand. Ready settle with your Bank the minute you will execute to me a fee simple deed."

Having received no reply to the letter of Mr. Wattenscheidt or to the telegram, the plaintiff wrote Colonel Henry L. Waters, the president of the bank, as follows:

"June 30, 1919.

"Col. Henry L. Waters,
    "President People's Bank of Somerset Co.,
        "Princess Anne, Md.

"My Dear Colonel:

"In June, 1918, your agent, George A. Cox, leased to one C. E. Brownell property 4903 Ferndale Avenue, Baltimore City, for a term of one year, beginning July 1st, 1918, and ending July 1st, 1919. This lease contained the usual provisions as to assignment, renewal and default. It also contained an option to the tenant to buy said property at any time during said term, in fee, at the sum of seven thousand dollars.

"On the 4th day of January, 1919, this lease was assigned to me by C. E. Brownell, which assignment on the same day was approved in writing on the face of said lease by your agent, George A. Cox.

"I notified Mr. Cox on or about the first day of June, 1919, that I was going to exercise my option. A few days subsequent thereto I presented to him a contract of sale in duplicate from your Bank to myself, thereby indicating my intention to exercise my option. Said contract provided for the purchase price to be paid fully on or before the first day of July. He said he would forward same to you at once.

"About the same time I heard that Mr. Cox was endeavoring to sell the property, and in fact had agreed to sell said property to another party. This of course must have been subject to the option of the tenant to buy as aforesaid.

"I have heard nothing from Mr. Cox since.

"About a week or ten days ago, I had Mr. Wattenscheidt to write you a letter, again indicating my purpose to exercise said option. Later, I think he talked with you over the 'phone. He told me that he had heard nothing of my determination to buy. This all

seemed strange to me, and a couple of days later I sent you a telegram.

"Absolutely no response has been made to any effort on my part to get an acknowledgment from you of any kind.

"My attorney has reported to me that this property is subject to a ground rent of one hundred and twenty dollars. It is, therefore, impossible for you to execute a fee simple deed at this time, and of course I am not called upon to make a tender of the seven thousand dollars for a title, subject to a two thousand dollar prior lien. The law does not require me to take action, which would be of no avail, or to make a tender of the seven thousand dollars under these circumstances. I have the seven thousand dollars on hand, ready to pay you in full as soon as you can deliver up to me a fee simple deed. I will tender it to you immediately upon knowledge of your ability to execute such deed.

"I wish you would please redeem the outstanding reserved rent on said property, at the earliest possible moment, notifying me when this is accomplished.

"When the transaction is finally consummated, the adjustment will be made as of July 1st, 1919.

"Will you please be kind enough to acknowledge receipt of this letter. I have done all I can do in furtherance of this transaction, and await your pleasure.

"Yours very truly,

"Linwood L. Clark."

"Dict. but not reviewed."

Not hearing from Colonel Waters the plaintiff states that he wrote him the following letter and received the following reply from counsel for the bank:

"Baltimore, Md., July 7, 1919.

"Col. Henry L. Waters,

"People's Bank of Somerset Co.,

"Princess Anne, Md.

"Dear Sir:

"We have sent three communications to you, two letters and a telegram, and have received no acknowl-

edgment of either. Do you not think that we are at least entitled to the courtesy of an answer?

"If your reason for not answering us and fixing a date and place for the 4903 Ferndale Avenue transaction to be completed is that you have not yet redeemed the ground rent, and are not in a position therefore to give an absolute deed, this can be overcome. I am perfectly willing to put the transaction through on the seven thousand dollar basis, deducting therefrom in the settlement the two thousand dollars ground rent outstanding, plus the accrued ground rent to July 1st.

"Please do me the kindness to answer this letter, and let me know just where you stand and what the difficulty is.

"I do not care to deal any longer with George A. Cox in this matter unless you insist on it. I have not found his representations to me to be correct.

"Yours very truly,"

"Princess Anne, Md., July 9th, 1919.
"Linwood L. Clark, Esq.,
"Attorney-at-Law,
"Baltimore, Md.
"Dear Sir:

"In response to the communications from you to Col. Henry J. Waters, President of the People's Bank of Somerset County, which were handed by him to me, that I, as counsel to the bank, might reply to the same, can say that the bank has no knowledge of the sale of the Ferndale Avenue property to you, either directly or indirectly.

"Very truly yours,
"L. Creston Beauchamp."

Before the receipt of the letter from counsel for the bank, the plaintiff, on July 8th, filed his bill of complaint in this case for specific performance of the alleged contract and for an injunction restraining the defendant from instituting ejectment proceedings, which, it is alleged, Mr. Cox threat-

ened to institute against him. The Court passed an order "that the defendant be and is hereby enjoined from instituting proceedings for the ejectment of" the plaintiff, unless cause to the contrary be shown on or before July 23rd, 1919, and on July 16th an answer was filed to the bill through Rufus W. Applegarth, Esq., attorney, and on the same day a motion was entered through said attorney to dissolve the injunction. On the 22nd of July Mr. Applegarth, by leave of Court, filed an amended answer, and on the 18th of August, 1919, the defendant, through Mullikin & Marchant, attorneys, filed an amended answer to the bill in the place of the answers previously filed. In this answer the defendant admitted that the property was leased to C. E. Brownell for the term of one year by George A. Cox, who was authorized by the defendant to lease the property; that the lease was assigned to the plaintiff, and that the defendant had accepted the rent from the plaintiff, but it alleged that the bank had no knowledge of the contents of the lease, and did not know until the bill in this case was filed that there was a written lease in existence. The answer further alleged that the defendant had no knowledge of the alleged option in favor of the plaintiff, or any one else, to purchase the property for $7,000.00 at any time during the term of the lease until about the 20th of June, when the complainant, by his attorney, advised the defendant that he desired to exercise an alleged option to purchase the property; that George A. Cox had no authority from the defendant to insert said option in the lease, and that the same was inserted without its knowledge or consent and that the defendant had never ratified said act of George A. Cox.

A replication was filed, and upon the testimony taken before him, Judge Gorter passed the order from which this appeal was taken dissolving the injunction and dismissing the bill. The ground upon which the learned Court below denied relief was that the evidence showed that Mr. Cox had no authority to give the option contained in the lease, and after

a careful examination of the record we find no escape from that view and no ground upon which to reach a different conclusion in the case.     There was no communication between the plaintiff and defendant until the letter of June 20th from the plaintiff's attorney to the bank, and the only evidence as to the authority of Mr. Cox, or the knowledge of the bank, is the testimony of the cashier of the bank and of Mr. Cox to the effect that Mr. Cox was never authorized to give an option or to execute an agreement for a sale of the property, and that the defendant never saw the lease in question until this suit was brought, and never heard of an option having been given until the bank received the letter of June 20th from plaintiff's attorney; that the bank had a judgment against the former owner of the property, and bought it at a mortgage sale to protect its interest; that it spent considerable money on it "in repairs," and through some friends, among whom was a Mr. White, who was in the Custom House, rented the property for a year; that after the tenant left the defendant engaged Mr. Cox to rent the property, and at the same time asked Mr. White and Mr. Cox to try to find a purchaser for it.     Mr. Crosswell, the cashier of the bank, testified positively that the defendant never gave Mr. Cox authority to sell the property, but "simply asked him to get us a bid and submit the price to us."     He further testified that the bank "never did fix any price" for the property, but that they had a little over $5,400.00 invested in it.

    The first answer, filed by Mr. Applegarth, contained the statement "that neither the said defendant or its agent, the said George A. Cox, agreed to give the said plaintiff the option to purchase the said property during said term for the sum of seven thousand dollars, but that said right and option was solely to the original lessee, C. F. Brownell," but the uncontradicted evidence is clear and positive to the effect that that answer was filed solely at the instance of Mr. Cox, and without the knowledge or consent of the defendant, who neither employed, or authorized the employment of, Mr. Applegarth.

The appellant seeks to hold the appellee bound by the option in the lease on the principle of estoppel, and relies, among others, upon the cases of *Hardy* v. *Chesapeake Bank,* 51 Md. 562; *Andrews* v. *Clark,* 72 Md. 396; *Ehrmanntraut* v. *Robinson,* 52 Minn. 333; *Meehan* v. *Forrester et al.,* 52 N. Y. 277. A glance at those cases will show that they have no application to the facts of this case. In *Hardy's case, supra,* the suit was by depositors to recover from the bank the amount due them upon a proper balancing of their account, the bank having paid out money on forged checks. It appeared that on several occasions after money had been paid on some of the checks the account had been balanced and the cancelled checks returned to the depositors, the appellants. The alleged forger was the confidential clerk and bookkeeper of the appellants. In reference to the appellants' responsibility for his acts, the Court said: "It is conceded that Holmes (appellants' bookkeeper and clerk) did not act as agent in drawing the checks; and if the appellants are not liable in respect to the fraudulent drawing, we do not perceive upon what principle they can be bound or made liable in respect to the fraudulent entry of those checks in the bank book. Holmes was not an agent for any such purpose, and the principle is too well settled to require the citation of authorities for its support, that the principal is bound by the acts of his agent only so far as the agent acts within the limits and scope of his employment. The fraudulent knowledge of the agent in regard to acts and transactions outside of and beyond his employment cannot be imputed to his principal. To do so would work the greatest injustice, and lead to the most anomalous consequences." In reference to the effect of the failure of the appellants, after the books had been balanced and some of the cancelled forged checks had been returned to them, to discover the forgeries, the Court said further: "We therefore think that the jury should have been required to find either that the appellants had knowledge in fact that the forgeries had been committed or that, from carelessness and indifference to the rights of others, they failed

to inform themselves from sources of information readily accessible to them and which, by the exercise of ordinary diligence as business men, would have disclosed to them the fact that the forgeries had been committed. If such facts be found to exist, then it must be also found, in order to work an estoppel, that the appellee acted, in honoring and paying the nine checks in question, in reference to the conduct of the appellants in failing to make known an objection to the account as stated and balanced in the bank book on the 13th of July, 1873, and that such omission and neglect of the appellants did in fact mislead the appellee into the error of paying the nine forged checks now in dispute. This doctrine of estoppel *in pais* is applied in a great variety of circumstances, but its great object is to prevent injustice being done, where one party has been led into error by the fault or fraud of the other. It is a most valuable doctrine for the promotion of justice; but it can have no application except where the party invoking it can show he has been induced to act or refrain from acting, by the acts or conduct of the adverse party, under circumstances that would naturally and rationally influence ordinary men." The case of *Andrews* v. *Clark, supra,* was an application of the same principle, and the case of *Ehrmanntraut* v. *Robinson, supra,* simply holds that where a principal enters into and enjoys possession under a lease he cannot afterward in a suit for rent deny the authority of his agent to make the lease. The case of *Meehan* v. *Forrester, supra,* holds that where an agent, who was only authorized to collect a debt, receives from the debtor a deed absolute on its face as security merely for the debt, and the deed is accepted by the principal, it will be presumed that the principal was advised of the arrangement, and if he received it without such information, that he adopted whatever arrangement the agent made in order to obtain the deed.

In the case at bar the only authority given Mr. Cox was to rent the property in question for a year, and to find a purchaser for it and submit his bid to the bank. That certainly did not include the authority to execute a contract of sale or

to give an option to purchase at a definite price. It is true the defendant did accept the rent, but that was entirely consistent with the authority given its agent to lease the property for a year. After authorizing Mr. Cox to lease the property, and after accepting rent for the same, the defendant could not have denied its agent's authority to lease, but neither the authority given its agent to lease the property for a year, nor its acceptance of rent from the appellant, imposed upon the defendant an obligation to examine the lease in order to discover whether its agent had exceeded his authority by giving the lessee, or his assignee, an *option to purchase* the *property* for a definite sum. If the defendant had accepted the rent with knowledge of the option a different question would have been presented, and if the defendant had held out Mr. Cox to the public or to the appellant as having the authority to give the option, it could not have been heard to deny that authority to the prejudice of one who dealt with him without knowledge of his actual authority. But the authority to lease the property for one year, and to find a purchaser and submit his bid to the defendant, did not carry with it the implied power and authority to give an option to purchase the property for a fixed price, and where the principal has done nothing to mislead those dealing with his agent he cannot be held liable for his acts beyond the limits and scope of his employment.

In the case of *Milne* v. *Kleb,* 44 N. J. Eq., 379, 14 Atl. 646, the Vice-Chancellor said: "But suppose it be admitted that the defendant gave the agent just the authority which the agent says he did, the question which this state of facts would present for decision would be, had the agent authority to bind the defendant by a written contract? He was a special agent, constituted to do a specific act—to negotiate a sale, or to find a purchaser who was willing to purchase at the terms specified. The rule with regard to such agents is settled. Their acts do not bind their principals unless they pursue their authority strictly, and those who deal with them

are chargeable with notice of the extent of their authority. The rule is general that a purchaser buying from an agent, must at his peril satisfy himself as to the extent of the agent's authority. He may always refuse to buy until the agent produces such evidence of authority as to leave no doubt of its extent. In this case no claim is made that express authority was given to the agent to make or sign a written contract for his principal. There is nothing in the circumstances of the case from which such authority could be fairly or reasonably implied. * * * Authority to make or sign a written contract is not conferred, where the thing to be sold is land, by giving an agent power, by parol, to sell. CHANCELLOR ZABRISKIE, in *Morris* v. *Ruddy,* 20 N. J. Eq. 238, said, following the rule adopted by the courts of New York, that 'giving authority to sell does not, by force of the terms, or by their general acceptation, give authority to sign the vendor's name to a contract; and in the case of lands it is not wise to extend their meaning by construction.' " In the case of *Spengler* v. *Sonnenberg,* 88 Ohio St. 192, the Supreme Court of Ohio said: "It is the settled law of this State that a real estate agent is without authority to execute a contract of sale which shall be binding on one who places real estate in his hands for sale, unless such authority is specially conferred. * * * The business of a real estate agent is to find a prospective purchaser for property whose owners desire to sell, and he has earned his commission, if employed, when he has found a person willing and able to pay the price stipulated, or has brought parties together who afterwards agree. The fact that the owner of real estate employs an agent to find a purchaser for it does not raise an implication that the agent is authorized to make a written contract with reference to it. * * * If the agent assumes to make a contract in excess of this authority, the agreement is void and unenforceable. Where special power is conferred upon an agent, persons dealing with him are bound to ascertain the extent of his power." The same rule is stated in

*Crumpacker* v. *Jeffry*, 63 Ind. App. 621, where the Appellate Court of Indiana said: "Such language addressed to a real estate broker is generally construed as conferring authority merely to find a purchaser, rather than authorizing the broker to go further and execute in the name of the owner a binding contract of sale. The overwhelming weight of authority seems to be to that effect." See also notes to 17 *L. R. A.* (N. S) 210 and 23 *L. R. A.* (N. S.) 982. We are not required in this case to go to the full extent of the authorities quoted, but we refer to them to show that authority to lease a property and to find a purchaser for it does not confer upon the agent the authority to give an option to purchase for a definite price, or to execute a contract of sale.

In addition to what was said by JUDGE ALVEY in *Hardy* v. *Chesapeake Bank, supra,* in regard to the extent to which a principal is bound by the acts of his agent, we may refer to the cases of *Lister* v. *Allen,* 31 Md. 543; *Equit. Life Assur. Soc.* v. *Poe,* 53 Md. 28; *Hardwick Bros.* v. *Kirwan,* 91 Md. 285; *Brager* v. *Levy,* 122 Md. 554.

It is not necessary to consider other features of the case affecting the plaintiff's right to specific performance of the alleged agreement. The burden was on him to show that Mr. Cox was the authorized agent of the defendant, and as the evidence shows that he had neither express or implied authority to give the option relied on, and as there are no circumstances in the case to justify the application of the doctrine of estoppel, the decree of the Court below must be affirmed.

Whatever hardship may result to the appellant from this conclusion must, under the authorities referred to, be attributed to his failure to satisfy himself as to the extent of the agent's authority, and not to the fault of the defendant.

*Decree affirmed, with costs.*