# READ DRUG AND CHEMICAL COMPANY OF BALTIMORE CITY, A Corporation,

## *vs.*

## JENNIE NATTANS.

*Equitable estoppel. Leases: part performance; specific performance.*

Where one has acted under the terms of a proffered agreement to the extent of securing the benefits which it affords, he should be estopped to deny the existence and mutuality of the contract.                                    pp. 471-472

Where a lessee of property has expended large sums of money in improving it, upon the faith of the owner's promise to extend the lease for a specified term and rental, and, after the improvements are made, the owner refuses to make the extension, equity has jurisdiction to require the agreement to be specifically performed.                            p. 472

A binding acceptance of an offer may be signified by deeds as well as by words.                              p. 471

*Decided March 13th, 1917.*

Appeal from the Circuit Court of Baltimore City. (Dawkins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Randolph Barton, Jr.,* and *Joseph C. France* (with whom was *J. Pembroke Thom* on the brief), for the appellant.

*Lee S. Meyer* and *Charles F. Harley,* for the appellee.

URNER, J., delivered the opinion of the Court.

Upon a former appeal, this case was presented on demurrer to the bill of complaint (129 Md. 67). It is now to be considered upon the proof. The Record is voluminous, and a detailed review of the testimony would not be practicable within the proper limits of an opinion. The essential facts will be stated in accordance with what the Court regards as the preponderance of the admissible evidence.

The law of the case was settled upon the prior appeal, and we have now only to determine, as a question of fact, whether a definite and mutual agreement has been proven for the renewal of the existing lease, from the appellee to the appellant, of the building at the corner of Howard and Lexington streets, in the City of Baltimore, which the lessee company is using in the conduct of its drug and chemical business. The present lease was executed on January 21, 1908, for a term which will expire on June 30, 1917, and for a yearly rent of $11,000. Mrs. Jennie Nattans, the lessor and appellee, is the owner of the property for life, with remainder in her children, under the will of her husband, Arthur Nattans, who died in the year 1905. The business now in operation on the leased premises was formerly owned by Mr. Nattans and was transferred by him to the appellant corporation,

which he organized and controlled. By his will the entire capital stock of the company, with the exception of four shares belonging to other persons, was bequeathed to trustees who were directed to pay the income from fourteen of the shares to the widow, and from twenty-four shares to certain employees of the company and a house servant, and from specified allotments of his remaining three hundred and fifty-eight shares to his children, including those by a former marriage. The trustees named in the will were Mrs. Nattans, W. Burns Trundle, Esq., and Mr. Samuel L. Bachrach, husband of a daughter of the testator by his first wife. Upon Mr. Trundle's death, Edwin T. Dickerson, Esq., was appointed as his successor in the trusteeship. The affairs of the appellant company were controlled by a board of directors consisting of Mrs. Nattans, her sons, Ralph and Arthur, and her co-trustee, Mr. Bachrach. The presidency of the company was held by Mrs. Nattans. Ralph Nattans was its treasurer and general manager, and Arthur Nattans was assistant manager and secretary.

The property leased to the company was used by it in conjunction with an adjacent and communicating building which it held under lease from a trustee representing what is known as the Hamman estate. That lease was for a term of five years ending July 31, 1914. A short time before its expiration an agreement was reached for the renewal of the lease for a term of two years and eleven months. This was the precise period of the unexpired term of the Nattans lease. The new Hamman lease provided for a further renewal, at the option of the lessee, for an additional term of ten years. As proceedings in equity were required for the appointment of a trustee to act for the persons, some of them infants, who were interested in the Hamman property, the new lease was not ready for execution until December 14, 1914, when it was signed by the trustee, and by Mrs. Nattans as president of the Read Drug and Chemical Company.

In August, 1914, the Nattans and Hamman buildings were both damaged by fire. The insurance on the properties was adjusted in due course and produced funds sufficient to restore the buildings to their former condition. These funds were turned over to the lessee in evident recognition of the contractual liability of the respective lessors to make the necessary restorations. It was proposed, however, by the general manager of the Read Company, that material changes be made in the structure of the two buildings so as to make them one in external appearance and render them more attractive and convenient for the business to which they were devoted. A special meeting of the board of directors was held on October 27, 1914, when, according to the minutes: "The general manager stated he wanted to spend about $30,-000 in improving and repairing the Nattans and Hamman buildings, at Howard and Lexington streets, according to plans submitted, provided the owners of said buildings turn over to him the money received from the insurance companies in settlement of the fire loss, and a lease be obtained from Mrs. Nattans for ten years more after the expiration of the present lease. The following resolution was then passed: Resolved that the general manager be authorized to make an agreement with Mrs. Jennie Nattans for the cancellation of the present lease and for the execution of a new lease for twelve and one-half years, beginning January 1, 1915, at a rental of $16,000 per annum for the first four years, $18,-000 per annum for the second four years, and $20,000 per annum for the remainder of the term."

The resolution just quoted was passed by the affirmative vote of all of the directors, except Mrs. Nattans, who presided and did not vote on the question. A few days later bids were accepted and contracts were entered into by the general manager, on behalf of the company, for the improvement of the buildings in pursuance of the plans he had submitted. The total cost of the improvements was $20,493.69, and the additional sum of $18,671.97 was spent for furni-

ture and fixtures. All of the payments for those purposes were made by checks of the Read Company signed by Mrs. Nattans as president and by Ralph Nattans as treasurer. The insurance money received on account of the damage to the buildings amounted to $6,903.81, which reduced to $13,589.88, the sum which the company paid out of its own funds for the structural changes and improvements. About sixty per cent of the total amount applied to permanent improvements was expended on the Nattans property.

In the early part of December, 1914, Mr. Dickerson, as counsel for Mrs. Nattans, was instructed by her as to certain stipulations she desired to have incorporated in the new lease for which the resolution of October 27 had made provision. The clauses thus suggested had reference to the payment of water rent and to the restoration of the division wall between the Nattans and Hamman buildings at the expiration of the new term. Mr. Dickerson had already received from Ralph Nattans the current lease of the property, and after his interview with Mrs. Nattans, he prepared a draft of a lease from her to the company for the term and rental stated in the October resolution, and included in substance the incidental provisions of the present lease and the additional ones which Mrs. Nattans had specially mentioned. The draft of the new lease, as written by Mr. Dickerson, was delivered by him to Ralph Nattans, who in turn handed it to his own counsel, Mr. Meyer, for examination, and the latter rewrote it with some slight amendments. On December 8, 1914, the draft prepared by Mr. Meyer was taken to the apartments of Mrs. Nattans on the occasion of a conference at which she and the other directors of the company were present, with their respective counsel, and when the clauses she had suggested for the lease were briefly discussed, but no question was raised by any one as to its main terms or as to the intention of the parties that it should be eventually executed.

Prior to the October meeting of the board of directors, a proposal had been made by Ralph Nattans, that the compensation he was then receiving as general manager, consisting of a yearly salary of $7,500, and fifteen per cent. of the annual profits of the business in excess of $20,000, should be increased by the payment to him of fifty per cent. of the profits over and above the sum stated, in addition to his regular salary. An interview which he had with Mr. Bachrach on the subject resulted in a written agreement by that director to vote in favor of granting the additional compensation desired. In the agreement referred to no allusion was made to the duration of the general manager's future service. The minutes of the October meeting as recorded show the passage of a resolution providing for the employment of Ralph Nattans as general manager of the company *for life* upon the terms he had proposed, and for the payment of two-fifths of his allotted half of the profits in excess of $20,000 to his brother Arthur as additional compensation to the latter for his services as assistant manager. When a copy of the minutes was afterwards submitted to Mr. Bachrach, he objected to the provision that the employment of the general manager should be for life, and insisted that the minutes were erroneous in recording a resolution to that effect. A controversy thus arose which culminated at a meeting of the directors on December 28, 1914, when, as the minutes show, Mrs. Nattans and her son Arthur stated that they approved of the employment of Ralph Nattans as general manager for life, with the increased compensation he had requested, and when Mr. Baachrach renewed his objection to such a contract, and when, to quote from the minutes: "Ralph Nattans then announced that Mrs. Jennie Nattans was unwilling to enter into any new agreement relative to the leasing of the premises at Lexington and Howard streets." To that decision Mrs. Nattans has since adhered.

The refusal by Mrs. Nattans to execute a new lease of the property, in pursuance of the resolution of October 27th, is

vitally prejudicial to the lessee corporation of which until recently she was president, and to the interests of the estate of which she is still a trustee. If the lease is not renewed, the company will not only be forced from the location where its business originated and has been conducted for years, but it will lose the benefit of the large investment it made in the improvement of the leased property upon the condition that the renewal should be granted. The trust estate would likewise sustain a serious injury from the shrinkage in the value of the Read Company's stock, constituting the entire assets of the estate, which would be the inevitable result of its eviction from its long established place of business. The failure of the company to secure a renewal of its lease of the Nattans property would, of course, compel it to forego the exercise of its option to renew the simultaneously expiring lease of the Hamman building, which, as reconstructed with the company's funds in anticipation of the renewal of both leases, is not adapted to separate use for its purposes.

The equities of the case clearly and strongly favor the plaintiff's claim for a renewal of the lease, and in our judgment there is an ample basis of law and fact upon which the enforcement of that demand can be decreed. A definite proposal was submitted by the lessee to make substantial and expensive improvements to the leased building, *provided* the lessor would renew the lease for an additional term of ten years. The lessor's acceptance of that conditional offer was evidenced in a positive and practical way by her active participation in the expenditure of the lessee's funds upon the specified improvements. The mere circumstance that the lessor may not have expressed her assent in words does not detract from the conclusive effect of her conduct. Authorities have been cited, but none are needed, to support the obviously sound theory that a binding acceptance of an offer may be signified by deeds as well as by words. The plainest principles of justice require that one who has acted under the terms of a proffered agreement, to the extent of securing the

benefits which it affords, should be estopped to deny the existence and mutuality of the contract. *Eareckson* v. *Rogers,* 112 Md. 169; *Carmine* v. *Bowen,* 104 Md. 204; *Carroll* v. *Manganese Safe Co.,* 111 Md. 258; *L. C. Smith Co.* v. *Riddlemoser,* 126 Md. 193; *Brantly on Contracts,* sec. 16; 16 *Cyc.* 791; 6 R. C. L. p. 587; 2 *Pomeroy's Equity,* sec. 802; 2 *Story's Eq. Jur.* (13th ed.), p. 861.

It was testified by and on behalf of Mrs. Nattans that she distinctly refused at the directors' meeting of October 27th to agree to a renewal of the lease at the rentals mentioned in the resolution, and that she insisted upon a rental of $20,000 annually accounting from the time of the fire. That such a demand was made by Mrs. Nattans is conceded, but the proof is convincing as to her acquiescence in the terms of the resolution after it was passed.

. The case as developed by the proof differs from that stated in the bill of complaint in respect to the authorship of the proposal as to the amount of the rent to be paid under the lease during the period of its extension. It was alleged in the bill that the defendant herself designated the rentals set forth in the resolution of the board of directors. The proof is that Mr. Bachrach suggested the amounts. But the acceptance of the terms of the resolution by the defendant, in the manner we have described, places the case in the same situation, so far as the present question is concerned, as if she had originated the offer.

The principle of our ruling on the demurrer to the bill is applicable to the case, as proven. In the former opinion it was said: "When a lessee of property has expended large sums of money in improving it upon the faith of the owner's promise to extend the lease for a specified term and rental, and, after the property has been thus improved, the owner refuses to make the extension, we can have no doubt as to the existence of adequate equity jurisdiction to require the agreement to be specifically performed." As we now hold upon the evidence that the defendant's conduct was equivalent to

an agreement on her part to renew the lease upon the terms offered, and as the plaintiff has fully performed the undertaking in consideration of which the lease was to be renewed, the conclusion necessarily follows that the agreement should be enforced.

It was the evident purpose of the resolution of October, 1914, that the new lease should be a renewal of the provisions of the one now in force except for the intended increase of rent and extension of the term. No question was then raised as to any change in the provisions of the lease in other respects, and the clauses which Mrs. Nattans desired to have added do not appear to have been suggested until more than a month had elapsed after the passage of the resolution and the beginning of the improvements which were then under consideration. It is stated in the brief for the appellant that there is no objection to the clauses proposed by Mrs. Nattans, as formulated by her counsel, and the lease to be executed, for the term and rental mentioned in the resolution, should include the clauses just referred to and the appropriate provisions of the existing lease.

The decree of the Court below, dismissing the bill of complaint, will be reversed and the cause remanded to the end that a decree of specific performance may be passed in accordance with this opinion.

*Decree reversed, with costs, and cause remanded.*