## RECKORD MANUFACTURING COMPANY *v.* E. THOMAS MASSEY.

*Sale of Goods—Note or Memorandum—Signature—Agent for Both Parties.*

A letter confirming an oral sale, giving the names of the buyer and seller, the description, quantity, and price, of the goods sold, the place and time of delivery, and the terms of sale, and signed in the seller's name by its agent, was a sufficient note or memorandum in writing, within Code, art. 83, sec. 25, to support an action by the buyer against the seller.                      p. 351

After an oral agreement for the sale and purchase of goods has been completed, the seller's agent may, by signing, in his name alone, a note or memorandum of the sale, bind the buyer as well as the seller, if he is duly authorized by both buyer and seller, and he signs with the intent to bind both.              p. 352

A travelling salesman is presumably not authorized by one who buys of him to sign a contract for the latter as purchaser, and hence such authority must be established, by direct testimony or by necessary implication from the circumstances, to have been actually conferred on him by the buyer.    pp. 352, 353

The agency of a third party may be proved by parol and may be shown by the prior delegation of authority or by subsequent ratification.  p. 353

That plaintiff company's travelling salesman, after making an oral sale to defendant, was requested by the latter to put the conversation or agreement in writing and send it to him, and that three days later, after his return to plaintiff's place of business, the salesman wrote defendant a letter confirming the sale, which be signed in plaintiff's name, with his own signature added, did not show that, in signing his own name, the signer was acting in behalf of the buyer.  pp. 353-356

The fact that some weeks later the buyer offered to take the goods at a lower price did not make the letter binding on him.

p. 357

Where there is a distinct repudiation of a contract, no ratification can be inferred, even if the repudiation be accompanied with the offer of a different contract.  p. 357

*Decided June 10th, 1926.*

Appeal from the Circuit Court for Queen Anne's County (WICKES and KEATING, JJ.).

Action by the Reckord Manufacturing Company against E. Thomas Massey. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*W. Mason Shehan* and *G. Elbert Marshall,* with whom were *S. A. Williams, J. H. C. Legg,* and *Seth, Shehan & Marshall,* on the brief, for the appellant.

*John D. Urie,* for the appellee.

PARKE, J., delivered the opinion of the Court.

W. O. Finney, the traveling salesman of Milton A. Reckord, trading as the Reckord Manufacturing Company, the appellant, secured an oral order from E. Thomas Massey,

the appellee, for a quantity of cottonseed meal for future delivery; and was requested by the buyer to reduce the agreement of sale to writing on the salesman's return to the place of business of his·employer and to send the paper writing to the buyer. Three days after the sale, the salesman wrote and mailed, and the buyer duly received, the following letter:

"THE RECKORD MANUFACTURING CO.
Merchant Millers.
Flour, Feed, Fertilizers, Lime and Salt.

Bel Air, Md., July 19th, 1920.

Mr. E. Thomas Massey,
Massey, Kent Co., Md.

Dear Sir: We confirm sale to you of 25 ton 36% cottonseed meal December shipment at $68.50 per ton F. O. B. Massey. Terms arrival draft B/L attached, any advance in freight rate to be assumed by the buyer.

Thanking you for this business, we are,

Very truly yours,

RECKORD MFG. CO.,
W. O. Finney."

The seller shipped the meal at the time mentioned in the letter, but the buyer refused to accept it. The market price of the meal having meanwhile fallen, the refusal of the goods resulted in a loss to the seller, who sued the buyer to recover. At the conclusion of the proof, the trial court granted a prayer taking the case from the jury on the ground that the contract had not been established by the requisite proof.

The sale was within section 25 of article 83 of the Code, which provides: "25. A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." The buyer never did accept

and receive any part of the meal, nor did he give anything in earnest to bind the bargain or in part payment. It follows that the contract to sell was not enforceable by action, unless the letter quoted fulfils the third alternative requirement of the statute.

There is no question of the authority of the salesman to write the letter and to sign it, as he did, in behalf of the Reckord Manufacturing Company. Moreover, in the letter are found the names of the buyer and of the seller, the description, quantity and price of the goods sold, the place and time of delivery, and the terms of payment. The terms and subject-matter of the contract or sale are, therefore, contained in the letter, and it follows that the Reckord Manufacturing Company, through its accredited agent, the salesman, W. O. Finney, signed a sufficient note or memorandum in writing of the contract, so that an action might have been enforced by the buyer against the seller. *Drury & Co. v. Young,* 58 Md. 546, 550, 555; *Jaeger v. Shea,* 130 Md. 1, 5; *Engler v. Garrett,* 100 Md. 387, 397; *Abrams v. Eckenrode,* 136 Md. 244, 248; *Williston on Sales* (2nd ed.), sec. 114. Unless the letter of confirmation be signed by the addressee or his authorized agent, the effect of the letter was to make the previous oral contract good or not at the election of the addressee. In the instant case it is the buyer who did not sign, and, as the action was brought against him as the party to be charged, the contract cannot be enforced against him, unless it was signed by his constituted agent.

The appellee denied that he bought or agreed to buy the meal of the appellant, or ever authorized the appellant's salesman to act as his agent, but as this appeal is presented here for consideration, it must be assumed that there was an oral order or agreement of purchase and sale, and that whatever testimony there is on the record tending to establish the disputed agency must be accepted as true for the purpose of ascertaining its legal sufficiency. The appellant's contention is that when the agent of the seller wrote "Reckord Mfg. Co.," with his name underneath, he signed, not only the name

of the seller but also the name of the buyer, because he was then acting as the agent of both the buyer and the seller.

So far as the letter of confirmation disclosed, the agent of the seller did not profess, at the time he wrote his name, that he was acting on behalf of the buyer as his other principal. When the agent wrote the letter and subscribed it, the business of the appellant was carried on in the trade name of the Reckord Manufacturing Company. It is not unusual for the writer of a business letter to sign the trade name, with his own below, so as to identify the writer of the communication, because the trade signature alone is colorless and does not reveal the author, in order that his representative capacity may be known or ascertained. The form of the signature to the letter, therefore, afforded no intrinsic evidence of an intention on the part of the agent to sign for the buyer, especially in view of the fact that the note or memorandum is an ordinary business confirmation of a previous agreement of an agent to sell goods of his principal, and purports to speak only for the seller. *Richmond Standard Steel etc. Co. v. Chesterfield Coal Co.,* 160 Fed. 832. But as the proof on the part of the buyer tended to show a prior completed agreement to sell and buy, and inasmuch as the letter disclosed the name of the buyer and the other requisites of a contract, the salesman, if he were in fact the agent of both, could have bound the seller and the buyer by signing the letter in his name alone, provided he were duly authorized by both buyer and seller, and signed with the intent to bind both principals. *Browne, Statute of Frauds,* secs. 364, 365, 369; *Batturs v. Sellers,* 5 H. & J. 117, 6 H. & J. 249; *Stoddert v. Vestry,* 2 G. & J. 227, 230; *Drury & Co. v. Young,* 58 Md. 546, 550, 555; *Kahn v. Carl Schoen Silk Corp.,* 147 Md. 516, 526; *Williston on Sales* (2nd ed.), sec. 114; *Williston on Contracts,* sec. 587.

A traveling salesman is presumably not authorized by one who buys of him to sign a contract for the customer as purchaser. *Imperial Cap Co. v. Cohen,* 11 Ont. L. 382. And there was nothing in the nature of the salesman's occupation

which conferred upon him the authority to sign for both the seller and the buyer, as in the case of an auctioneer or a broker, who become indifferent middlemen when the sale is made. *Moore v. Taylor,* 81 Md. 644, 647; *Williams v. Woods,* 16 Md. 220; *Ijams v. Hoffman,* 1 Md. 423, 436; *Austin, Nichols & Co. v. Lingo,* 136 Md. 183, 190. Hence the salesman's authority to sign for the buyer must be established by direct testimony, or by necessary implication from the circumstances, to have been actually conferred upon him by the buyer. This delegation of authority by the buyer to the agent of the seller should be shown by clear proof of the full knowledge and consent of the buyer. The agent cannot directly establish the contract by his oral testimony, and it is barely escaping the letter and spirit of the statute, which subsists to defeat the evil of the frauds and perjuries incident to the proof of contracts by parol, to allow the same witness indirectly to establish the identical oral contract by testifying that the party buying made him his agent to sign a note or memorandum of the contract to sell. See *Sharman v. Brandt,* (1871) L. R. 6 Q. B. 720.

The agency of a third party may be proven by parol and may be shown by the prior delegation of authority or by subsequent ratification, as will be found illustrated by the cases of *Batturs v. Sellers,* 5 H. & J. 117; *Drury & Co. v. Young,* 58 Md. 546, 550, 555; *Kahn v. Carl Schoen Silk Corp.,* 147 Md. 516.

The proof offered by the appellant was to the effect that its traveling salesman saw the appellee for the purpose of selling him cottonseed meal, and that the appellee requested the salesman "to put that conversation or agreement in writing for him, and send it to him." The salesman returned to his principal's place of business, reported the sale and three days later wrote the letter to the appellee confirming the sale, after it had been approved by the appellant. The form and contents of the letter were the composition of the salesman. The appellee was not present when the letter was written, and was wholly ignorant of its terms. And he was not made

aware of what the letter contained until it came in the mail. He had not authorized the salesman to do more than put the "conversation or agreement in writing" and then to forward it to him. The whole course of the salesman and the letter were consistent with an agency merely for his own principal. 1 *Mechem on Agency* (2nd ed.), secs. 75, 849, 861. To hold that a letter so formulated and delivered was issued pursuant to an antecedent delegation of authority by the buyer, and was signed by the salesman while professing to be acting on behalf of the buyer, is to go beyond any authority which has been called to the attention of this Court. Here the letter was not written in the presence of the buyer, who saw his name inserted along with that of the agent of the seller, and the goods bought, the terms of the sale set forth, and then contemporaneously accepted from such agent this detailed note or memorandum of the sale, as was done in the case of *Batturs v. Sellers,* 5 H. & J. 117, 119, and in *Durnell v. Evans* (1862), L. J. Exch. 387, 1 H. & C. 174, 158 Eng. Reprint, 848. Under these and other special circumstances, the court held that the jury might have found that the acquiescense and immediate participation of the party in the act of the agent amounted to a contemporaneous authorization or adoption of the agent's act, but the instant case does not present similar circumstances. However, in *Murphey v. Boese* (1875), L. R. 10 Ex. 126, the plaintiff's traveling salesman called on the defendant and obtained from him an order for clocks, and the salesman, in the presence of the purchaser, wrote out an order for the goods, setting forth the names of the buyer and seller, and all the terms of the contract, and handed a duplicate original of the order to the buyer and kept the original. The court distinguished *Durnell v. Evans, supra,* upon the ground that in that case there was evidence that the defendant had requested that the date of the memorandum might be altered so as to give the defendant an additional week's credit, and that the other parties assented and the alteration was accordingly made, and held that there was no evidence in the case before the court that

the salesman had authority to sign the memorandum as the buyer's agent. As pointed out by Bramwell, B.: "Suppose the thing was done in a hurry, and the defendant had said, 'The contract to which you have put my name is inaccurately drawn up, and I will maintain an action against you for your blunder,' would not the agent have been surprised at this?" p. 129. And, as was said by Pigott, B., "There was nothing done by the defendant to show that he constituted the traveler his agent. All he did was to give an order, and when it was written out to take possession of it. * * * Now it seems to me that none of the facts are different from what they would have been if the traveler had been only the plaintiff's agent. There is no circumstance inconsistent with his being merely the agent of the vendor. The buyer did nothing which is not done every day where the traveler acts for the vendor only." At p. 130. See *Benjamin on Sales* (6th Ed.), pp. 312, 315; *Mews v. Carr,* (1856) 1 H. & N. 484, 156 Eng. Reprint, 1292.

In *Graham v. Musson,* 5 Bing. N. C. 603, 132 Eng. Reprint, 1232, the sellers were wholesale grocers residing in London, and their traveling salesman called on the buyer, who was a grocer at Gamsboro, and the salesman sold for the account of his principals thirty mats of sugar, to be sent to Fenning's Wharf on the Thames. At the time of the sale, the salesman, in the presence and at the desire of the buyer, made and signed in his own name an entry of the contract of sale in a book of the buyer, who kept the book with the entry so made. It was contended that the salesman was the agent of the buyer for signing and, so, his own signature was that of the buyer, because it was affixed for the buyer's benefit, but the court held the salesman was the agent of the sellers, and that the request by the purchaser that the seller's agent should sign a memorandum of the bargain was no proof of agency to sign the purchaser's name. The request of the buyer that the salesman of the sellers should make the entry of the sale in the buyer's book was consistent with the purpose of the buyer to bind the sellers, but not to appoint the sales-

man as an agent for himself.  *Graham v. Fretwell,* (1841) 3 M. & G. 368, 133 Eng. Reprint, 368.

The only authority conferred on the salesman by the buyer was to prepare in writing and forward to the buyer the order for the goods sold.   The salesman was authorized neither to agree for the buyer on the terms of the sale nor to authenticate the memorandum of the sale by signing it for the buyer. It may well have been the purpose of the buyer, in making this request, to secure an opportunity of fixing the terms and the seller by his written memorandum, knowing that the party not signing was not bound until the memorandum was authenticated by his authorized signature.   It was not within the scope of the special authority given to the salesman of the adverse party by the buyer, for the salesman to authenticate the memorandum by the signature of the buyer, and it was necessary for the appellant to show that in signing the memorandum the salesman was the appellant's agent in that behalf.   Compare *Smith v. Webster* (1876), L. R. 3 Ch. Div. 49, 56-58;  *Thirkell v. Cambe* (1919), L. R. 2 K. B. 590, 595, 598-599;  *Brager v. Levy,* 122 Md. 554, 561, 562.   In discussing the nature of the delegation of authority and its extent, to authorize the signature of the principal by an agent, it is said in *Browne on Statute of Frauds,* sec. 370: "Of course the power must embrace the act of signature; if it extend only to settling the terms of the contract, or taking notes, or writing out the agreement, or doing anything else merely preliminary to the signature, it is insufficient."  *Earl of Glengal v. Barnard,* 1 Keen, 769, 787;  *Dixon v. Brownfield,* 2 Chitty, 205.   Compare *Clark v. People's Bank,* 136 Md. 263, 275, 277.

The salesman here did not act in the name of the alleged buyer, but wrote and signed the letter as a communication purporting, in superscription, form, context, and subscription, to come from and be the act of the seller alone.   The recipient of the letter never had it submitted to him, nor did he see it until it was delivered by mail.   The writer of the letter was in the continuing employment and service of

the seller, and he did not write it until three days after he had visited the buyer. If a salesman in the full partisanship of an adverse relation were allowed to make written evidence of the terms of a bargain to sell, out of the presence of the buyer and at a later date, evils might arise similar to those which the statute was designed and enacted to prevent. See *Bell v. Balls* (1897), L. R. 1 Ch. Div. 663, 671, 672; *Wilson v. Lewiston Mills Co.,* 150 N. Y. 314.

In conclusion, we find no sufficient proof of a ratification by the buyer of the signing of the letter by the agent of the seller as the act of the buyer, who denied any obligation to pay according to its statement of the terms of sale. The fact, some five or six weeks after the receipt of the letter, the buyer was alleged to have offered to take the meal at the lower price then prevailing on the market, does not take the letter in question out of the statute. Where there is a distinct repudiation of a contract, no ratification can be inferred, even if the repudiation be accompanied with the offer of a different contract. 1 *Mechem on Agency* (2nd Ed.), sec. 432; *Hardwick v. Kirwan,* 91 Md. 285.

The two exceptions to the rulings on the evidence do not require discussion, as they became unimportant because of the conclusion that, for the reasons assigned in this opinion, there was no error in granting appellee's prayer taking the case from the jury.

*Judgment affirmed, with costs.*