FREY & SON, INC., *v.* W. HARRY MAGNESS.
[No. 3, October Term, 1931.]

376

*Decided December 4th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*W. Frank Every* and *J. Purdon Wright,* for the appellant.

*Robert H. Archer,* with whom was *William P. Cole, Jr.,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellant, a dealer in canned goods, sued the appellee, a canner, for damages from breach of a contract to sell and deliver to the appellant eight hundred cases of canned corn, and the principal question in the controversy is whether the contract was for sale and delivery of the eight hundred cases unconditionally, or was for sale and delivery of that amount only of corn to be received and packed from specified crops then growing and purchased by the canner for his supply, but which failed. The trial court referred the ascertainment of the terms of contract to the jury, to be found from testimony partly in writing and partly in parol. The admission of the parol testimony was excepted to because of the existence of a written contract or bought and sold notes signed by the broker, complete in form; and reference to the jury of the ascertainment of the terms of contract was excepted to on the ground that the testimony of both parties, written and parol, showed only a sale of the eight hundred cases

unconditionally. Other exceptions to rulings on evidence will be discussed later.

The plaintiff's testimony was that Frey & Son, Inc., of Baltimore City, having heard in August of 1928 that storms had reduced the crops of corn, called up several brokers of canned goods in the city and asked what they had to offer in Fancy Shoepeg corn. One of the brokers, Thomas L. North, trading as Meehan & Co., Inc., on August 22nd, through an assistant, Cain, called the defendant in Harford County on the telephone, and arranged for the sale of the eight hundred cases of the Shoepeg corn. The parol testimony of Magness to the original conversation between them was that Cain asked what corn Magness had to sell; Magness answered that he had some planted but not matured yet, meaning the corn he had bought for his supply, and they discussed the acreage of it, and, as Magness testified, "We both thought under normal conditions we would pack eight hundred cases anyway. He said he had an order for eight hundred cases of Fancy Shoepeg corn. I told him I didn't know whether I could pack Fancy Shoepeg corn or not. He said if it was pulled young and handled nicely as it is going through the cannery it would be all right. I told him I always pulled the corn young, at least tried to and if that was all I thought I could fill the order. I guess that is about all that was said." Cain, now no longer in North's employ, testified to substantially the same effect for the defendant: That North told him, Cain, that Mr. Frey wanted to buy Shoepeg corn, and directed Cain to get in touch with some packers; Magness was one of the packers called up and asked whether he wanted to sell any Shoepeg corn; Magness told Cain the acreage he had in, and Cain said he thought Magness had enough to get eight hundred cases; and Magness "said he would take the order." Cain testified that he would have liked to get a thousand cases from Magness, but they discussed the acreage, calculated, as usual in Harford County, an average yield of seventy to seventy-two cases to the acre of Shoepeg, and concluded to make the sale of eight hundred cases. Thereupon, North, as the broker, prepared

the written memoranda or notes of the transaction, and on the next day, August 23rd, forwarded them to the respective parties with a letter saying, in that sent to Magness, that, confirming the telephone conversation, "enclosed please find our contract, covering our purchase of you for account of Frey & Son, Inc., this city, 800 cases No. 2 tins 1928 pack Fancy Shoepeg Corn at $1.15 per doz. delivered fob Fallston, Md., for shipment under your label, or under buyer's label, buyer's option." And the seller's memorandum or note of contract inclosed was for the purchase and sale: "For account of Frey & Son, Inc., Howard & West St., Baltimore, Md., 800 cs No. 2 Fancy Shoepeg Corn at $1.15 doz." Magness testified that he received the contract on that same day, August 23rd. He further testified that, two or three days later, Mr. Cain again called and wanted to know whether he, Magness, "would raise that eight hundred to a thousand cases," and that Magness answered, "No, nothing doing." One further telephone conversation was testified to by North, to the effect that, at about the time when delivery should have been made, he, North, called and Magness said he had some corn packed and under normal conditions it would take two or three days to pack up the order. On September 8th, Magness wrote to the broker that there was an extreme shortage in his Shoepeg corn pack, and that because of storms they could ship only part of the eight hundred cases. Frey & Son, however, declined to accept delivery of the part; the parties were unable to agree on a substituted brand of corn; and Frey & Son sued, and offered evidence tending to prove a rise in the market price of corn such as they had bought, and damage from the breach of contract, if there was one. A witness for the defendant testified on cross-examination that not all Fancy Shoepeg corn packed in 1928 was sold in advance, that there was some available later, but it was scarce. Verdict and judgment having been rendered for the seller, or defendant, the plaintiff has appealed.

In the opinion of this court, the question of admissibility of the previous parol negotiations, in the face of the broker's written record or note of agreement of sale, does not affect

the ascertainment of the terms of the contract, for we find that only one and the same contract for purchase and sale of eight hundred cases unconditionally could be found from either source. The sum and substance of the negotiations appear to be that Cain placed before Magness Frey & Son's unconditional order, and Magness, after some hesitation over his ability to furnish the specified quality or kind, accepted that order and agreed to fill it. The order was not presented as that of Cain or his employer for themselves; it was presented as the order of a customer, and the customer was not present to negotiate any change or restriction upon it. Moreover, it appears that there was no doubt or hesitation in Magness' mind as to his ability to deliver the quantity; his only doubt, which was removed, was as to the quality or kind of his purchased supply. And when that doubt was removed, he agreed to fill the order as it was presented. He did not hedge his acceptance about with any restriction as to his supply; in that respect his negotiations are in contrast with those in cases in which orders or acceptances have been found so hedged about. *Agri Mfg. Co. v. Atlantic Fertilizer Co.,* 129 Md. 42, 98 A. 365. It cannot, indeed, be judged whether such a limitation would have gained acceptance on the other side. The court cannot now, in the light of subsequent events, set up for him a limitation which would have been prudent. *Cook v. Pearce,* 160 Md. 434, 438, 153 A. 661. The buyer is entitled to enforcement of that which resulted from the acceptance of his order. *Pearson v. McKinney,* 160 Cal. 649, 117 P. 919; *Newell v. New Holstein Canning Co.,* 119 *Wis.* 635, 97 N. W. 487; *Pastene & Co. v. Greco Canning Co.* (D. C.), 268 F. 168; *Hayward Bros., Ltd., v. Daniel,* 91 L. T. N. S. 319.

But while we may disregard the question of the admissibility of the evidence of the parol negotiations in the ascertainment of the contract on this appeal, it is necessary that it be considered for the purposes of retrial. And we find the evidence to have been inadmissible because, under the Statute of Frauds, as now re-enacted in the Uniform Sales Act, Code, art. 83, sec. 25, the enforceability of the agreement,

whatever it may be, depends upon the completeness of the written note, and evidence of parol negotiations could not be received to add to or modify the terms expressed in the writing. *Balturs v. Sellers,* 5 H. & J. 117, and *Id.,* 6 H. & J. 249; *Kriete v. Myer & Co.,* 61 Md. 558; *Fisher v. Andrews,* 94 Md. 47, 50 A. 407; *Walter v. Bloede Co.,* 94 Md. 80, 50 A. 433; *Abrams v. Eckenrode,* 136 Md. 244, 247, 110 A. 468; *Reckord Mfg. Co. v. Massey,* 151 Md. 348, 352, 133 A. 836, 47 A. L. R. 195.

It is true that, if the seller has not accepted the writing as the agreement, such evidence might be introduced to invalidate the transaction consummated by the broker, or render it unenforceable by showing that the agreement as he wrote it was not within his authority. When the broker, as in this case, is agent of the seller only for the limited purpose of transmitting his acceptance of the order and executing the required memorandum, he cannot merely by writing bind the seller to any terms he may write; cannot, for instance, by merely writing it so bind the seller to a price differing from that accepted by the seller. *Fisher v. Andrews; Reckord Mfg. Co. v. Massey, supra; Coddington v. Goddard,* 16 Gray (Mass.), 436; *Murray v. Doud & Co.,* 167 Ill. 368, 373, 47 N. E. 717. But it appears from the record here that the broker's note was accepted by Magness as the contract. He testified that he received the contract, which was the broker's note mailed to him, on August 23rd, the date of its mailing in Baltimore. He kept this without demur until September 8th, when he declared that he was unable to deliver eight hundred cases, and even then he took no exception to the contract as written. "The party who receives and keeps a note in which the broker tells him in effect: 'I have bought for you,' or 'I have sold for you,' plainly admits that the broker acted by his authority, and as his agent, and the signature of the broker is therefore the signature of the party accepting and retaining such a note." *Benjamin, Sales* (7th Amer. Ed.), 244; (7th Eng. Ed.), 294. This being true, the evidence of the parol negotiations would not be admissible to prove lack of authority in the broker. A subsequent ac-

ceptance of his contract by the seller has made it the seller's own direct contract, and removed the question of agency.

If the conclusions so far stated are correct, the trial court was in error in rejecting a first prayer of the plaintiff for an instruction to the jury that there was no evidence legally sufficient to excuse delivery of the corn sold, and the verdict should be for the plaintiff for the difference between the market price and the contract price. The written contract which, as we find, determined the rights and obligations of the parties, was admitted by the defendant, and the instruction properly covered the only remaining issue of the amount of damages. It follows, further, from the conclusions stated, that there was error in the granting of an instruction for the defendant on the hypothesis of a finding of sale of the corn limited to the product of the canner's supply, in the face of a special exception taken by the plaintiff because of lack of legally sufficient evidence to support that hypothesis. And the granting of a second and a fourth prayer of the plaintiff for instruction of the jury, only in connection with this prayer of the defendant's, was necessarily erroneous.

Twenty-three exceptions were taken by the plaintiff to the admission of evidence on questions asked for the defendant; few are of importance, but the court, on reversing a judgment and ordering a retrial, is required to review all the rulings excepted to. Taking up the first, the broker, North, entered into a contract with George W. McComas for another kind of corn to substitute and fill Frey & Sons' order for eight hundred cases, but canceled the contract upon the representation of McComas that a mistake had been made, and the defendant asked whether the contract so canceled was similar to that now sued on; and the admission of the evidence forms the subject of a first exception. The inquiry was irrelevant, and possibly tended to carry an improper suggestion to the jury as to their treatment of the contract in suit, and it should therefore have been excluded. The second, third, fourth, sixth, and twenty-third exceptions were to questions on the possibility of the broker's understanding that weather conditions had some part in Magness' contract to

deliver, and on what were the weather conditions after August 22nd. At the stage of the case at which the questions were asked, this would seem to have been admitted properly. The defendant's letter of September 8th, announcing that weather conditions would cut down the amount delivered, had been read in evidence, and the questions put to the broker appeared then to be pertinent to the defense set up. We find no error in the rulings made. The seventh exception again was to a question of the price of the McComas corn, proposed to be substituted. In view of the fact that this was another kind of corn, the inquiry seems irrelevant, but the evidence was harmless, as it was answered that the price was five cents more than that fixed in the contract in suit. The eighth and ninth exceptions were to questions asked of Mr. Frey, as to his giving shipping orders between August 25th and September 8th or 9th. In view of the defendant's announcement that because of other conditions he would not fill the order, the questions were irrelevant.

The tenth, thirteenth, and twentieth exceptions refer to the admission of evidence of the original parol negotiations for the corn between Cain and Magness, over the telephone, which we have found erroneous, as already stated.

The fourteenth and fifteenth exceptions are to questions of the fair average yield of corn per acre in cans in Harford County, to which the answers were that seventy cases were ordinarily figured on. This was irrelevant, but harmless; it would make the defendant's expected supply equal over nine hundred cases.

The sixteenth exception was to a question of the quality of eighty-seven cases of Shoepeg corn which the defendant says he did pack. Inasmuch as the buyer was entitled to reject an offer of part of the goods bought (Code, art. 83, sec. 65), this question would seem to have no relevancy to any issue; but its admission, while erroneous, could not have caused material harm. The seventeenth and eighteenth exceptions were to questions concerning an Evergreen brand of corn, and these questions seem to be irrelevant. A nineteenth exception was to the question as to the supply of Shoepeg corn

available to canners, the answer to which was that such corn was available but scarce. This does not touch upon any of the issues, but seems harmless. Two other exceptions, the twenty-first and twenty-second, were to questions of the acres of a crop purchased by Magness from one grower, and these questions, too, were irrelevant to issues arising under the sale testified to.

*Judgment reversed, and a new trial awarded, with costs to the appellant.*