COASTWISE PETROLEUM COMPANY *v.*
STANDARD OIL COMPANY OF NEW JERSEY

[No. 17, January Term, 1941.]

338

[redacted]

*Decided April 9th, 1941.*

[redacted]

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, and COLLINS, JJ.

*Hiram C. Griffin* and *Randolph Barton, Jr.,* for the appellant.

*Edward E. Hargest, Jr.,* with whom was *Joseph O. Kaiser* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

There is but one exception in this appeal, and that is to the granting of the defendant's appellee's demurrer prayer. The plaintiff, appellant, claims to have had an enforceable contract with the defendant, for the purchase by the latter of 2,000 tons, ten per cent more or less, of motor benzol at 20 cents per gallon, f.o.b. Good Hope, Louisiana, which, after the repudiation of the contract by the defendant, it was obliged to sell at 14 cents per gallon, entailing a loss of $32,970.78.

The defendant's contention is that the alleged contract did not comply with section 22 (1), article 83, Code 1939, Act of 1910, ch. 346, p. 272. The plaintiff's contention is that, while there was no literal compliance with the section of the Code, the defendant is estopped by its conduct to deny the contract.

The negotiations leading up to the alleged contract appear to have begun with a radiogram from New York, from the purchasing department of the Standard Oil

Company of New Jersey to the Coastwise Petroleum Company, plaintiff, in Baltimore, "marketeers and exporters of petroleum and coal tar by-products." Israel E. Schwartz, president of the plaintiff, the same day, phoned information to Charles Augenthaler, an employee of Simpson, Spence and Young, all of New York, brokers and agents for the sale of products of the Coastwise Petroleum Company. Augenthaler on that day contacted a Mr. Wellinghausen, of the purchasing department, regarding the inquiry, and wrote a letter to the defendant, "subject to reply here, noon, Friday, October 14th, * * * loading November 10th-20th, Motor Benzol" of certain specifications, and said:

"If the loading date we have given you is not satisfactory to your people abroad; as explained to you, we can give you the material for an earlier loading but we would be obliged to cut down the quantity proportionately. At the same time, if your people are desirous of later loading, this can be arranged and we can increase the quantity proportionately. (The implications from which are that plaintiff did not have the quantity on hand.)

"If the time we have given you is not sufficient and if you will discuss the matter with us tomorrow, we will then look into our position and endeavor to give you an extension of the offer until Monday, the 17th."

There was no response to the letter from the defendant until October 24th, when the inquiry was received by its purchasing department. The same day, Augenthaler wrote the defendant that it would "have the benzol available by November 15th, possibly a day or two earlier if such requirement is necessary. This offer is good for reply by close of business Wednesday, October 26th," On the 27th, the witness Augenthaler said that Mr. Finn of Standard's purchasing department called up and told him they were accepting his offer and at a telephone conversation, when called by Augenthaler, Finn said, "Of course, this order is subject to arranging tonnage." * * * which had not been mentioned in the first conversation

when they accepted it. This meant arranging for transportation. The plaintiff offered to take care of the transportation, but its offer was not accepted, the defendant saying it preferred to do that itself. There was nothing further until November 4th, of which Augenthaler testified: "I visited Mr. Finn in the office in the early afternoon and tried to hurry this situation along, and he had no definite answer to give me about the tonnage, and about 3.30 that afternoon, after I returned to the office, he telephoned me and said he regretted to say that the Standard Oil Company had not been able to arrange tonnage, but the Atlantic Refining Company (an associate or subsidiary) had, and they wished to withdraw," and this marked the end of all negotiations.

Asked on cross-examination "Did you ever received a letter or a memorandum in writing, or anything in writing accepting the offer made in the letter of October 13th from the Standard Oil Company of New Jersey?" Mr. Augenthaler said, "The Standard Oil didn't make any· offer in a letter to me"; did not accept the contract; never answered in writing; never made a part payment, and never received any goods. He made the same replies to the plaintiff's offer by letter of October 26th, and to the phone offer of°October 27th.

In this state the law covering and controlling transactions of the character just recited is section 22 (1), of the Uniform Sales Act of 1910, ch. 346, p. 272, Section 22 (1), Article 83, Code of 1939, which is, in effect, the re-enactment of section 17 of the Statute of Frauds, 29 Car. 2, cap. 3 (*Coe's Alexander's British Statutes* 689), and reads as follows:

"A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receives the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It will be noted that it is admitted by the only witness

to the alleged contract, produced by the plaintiff, that none of the three acts, any of which may make an oral contract for the purchase and sale of goods of the value of fifty dollars, valid, and within the statute, is present in this case. As said in *Williston on Sales*, section 73, "Neither custom nor the conduct of the parties in other transactions can validate a transaction to which the statute is applicable where its requirements are not observed.

"In order to recover, therefore, a plaintiff must show a valid contract or sale at common law, and satisfaction of the statute in one of three specified ways. Until this has been done, the defendant may withdraw without liability." *Green v. Pa. Steel Co.*, 75 Md. 109, 112, 23 A. 139; *Hearn v. Ruark*, 148 Md. 354, 361, 129 A. 366; *Richard Mfg. Co. v. Massey*, 151 Md. 348, 350, 133 A. 836.

But the plaintiff says or asks this court to say that under such circumstances as appear in this case, the defendant is estopped to deny the existence of an enforceable contract, and relies upon Comment (f), section 178 of the Restatement of the Law of Contracts, and says that the principle there announced has been recognized and applied in *Read v. Nattans*, 129 Md. 67, 72, 98 A. 158; *Read v. Nattans*, 130 Md. 465, 472, 100 A. 736; *Thompson v. Thomas & Thompson Co.*, 132 Md. 483, 486, 104 A. 49, all leaseholds, and *Hohman v. Hohman*, 164 Md. 594, 616, 165 A. 812, affecting real property. An examination of those cases shows that there was part performance or part payment, which has long been recognized in this state as an estoppel to deny an oral contract.

Plaintiff also cites, as an authority for their recognition of the rule here urged by it, *Equitable Gas Light Co. v. Baltimore Coal Tar Co.*, 63 Md. 285, 297. The word "estoppel" does not appear in the opinion in that case, but the word "fraud" does. There the defendant had agreed orally for the sale to the plaintiff of all coal tar produced by the defendant at its gas works for the period of five years at a stipulated price, and they agreed to

reduce the agreement to writing. It was written and a duplicate copy left with defendant for execution. Plaintiff immediately began to haul tar from defendant's works and pay for it the agreed price, and continued so to do for ten months. In the meantime, the agreement had not been signed. The defendant then demanded a higher price for tar. The plaintiff then filed a bill for an injunction and specific performance of the contract. The defendant's contention there was that the contract, requiring more than a year for performance should have been in writing. It was there held that following an agreement that the contract would be in writing, followed by part performance and part payment, the injunction should be granted and specific performance decreed. That case, in our opinion has no application in this case.

The Act of 1910, ch. 346, in order to obviate the necessity of a writing says the buyer must accept part of the goods to be sold, or pay something in earnest or on account. To this the plaintiff asks this court to add a further exception—that of estoppel.

In our opinion this would mean a virtual repeal of the Act of 1910, ch. 346, Sec. 22 (1). The requirement that a contract for the sale and purchase of goods of the value of fifty dollars, or more, must be in writing, unless waived as stated, is statutory, and we are being asked to legislate by saying that when a buyer orally accepts an offer for goods of the value, of fifty dollars, the contract is enforceable and the defendant estopped from pleading the statute.

The trial court ruled in accordance with the express terms of the statute, and we are not inclined to do otherwise, and will affirm the judgment.

The negotiations were all in New York, and the law of that state would apply. The statute there is substantially the same as in this state, and we have not been shown, nor do we find, any decisions of the courts of the State of New York, applying or construing the statute at variance with the decisions of this court.

*Judgment affirmed, with costs.*