KATE THOMPSON, Widow of Albert E. Thompson, etc.,

*vs.*

THOMAS & THOMPSON CO. OF BALTIMORE CITY and JOHN B. THOMAS.

*Leases and agreements to lease: Code, Art. 21, sec. 1; co-tenants; powers to lease; acceptance of rent; ratification. Specific performance. Answers in equity: averments must be consistent; amendments.*

An agreement to a lease which is not executed so as to comply with the provisions of the Code in section 1 of Article 21, may constitute a perfectly good agreement to enter into a lease in accordance with the terms set forth, such as a Court of Equity will specifically enforce.                    p. 485

One tenant in common has no right to bind the other by signing a lease for the property; but where the co-tenant accepts the rent of the property, as fixed by the lease, it amounts to a ratification of the lease.                    p. 486

A ratification may be established by acts, as well as parole or written agreement.                    p. 486

To maintain a bill for specific performance, it is necessary that the agreement which the Court is asked to enforce be fair, just, reasonable, *bona fide* and certain in all its parts, and based upon a good and valuable consideration.                    p. 486

Amendments to an answer in equity are not generally permitted.                    p. 488

And an amendment can not be made when the amendment would be inconsistent with the rest of the answer.          p. 489

An answer to a bill in equity must be consistent with itself, and must not contain repugnant averments.          p. 489

*Decided April 3rd, 1918.*

Appeal from Circuit Court No. 2 of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER and STOCKBRIDGE, JJ.

*J. Cookman Boyd,* for the appellant.

*Frank Gosnell* and *William Pepper Constable* (with whom were *Marbury, Gosnell & Williams* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The questions of law involved in this appeal are not difficult, and have been settled as far as this State is concerned by the cases of *Falck* v. *Barlow,* 110 Md. 159; *King* v. *Kaiser,* 126 Md. 213, and *Read* v. *Nattans,* 129 Md. 67 and 130 Md. 470.

The bill of complaint is one for specific performance. It will suffice to refer very briefly to certain prominent facts appearing from the exhibits and evidence, to make entirely plain the proper application of the legal principles as set out in the cases already mentioned.

Plaintiff's Exhibit No. 1 purports to be an agreement to lease certain premises, known as No. 103 E. Baltimore street, by John B. Thomas and Kate Thompson, Trustee, to the Thomas & Thompson Company. It is dated May 10th, 1910,

and appears to have been intended as a lease of the cellar and first floor of 103 E. Baltimore street, for a term of five years, at a rental of $3,600 per annum, for the half interest of the appellant therein; and further to be a lease for ten years, commencing at the expiration of the five years, at an annual rental of $4,000 for the same half-interest.

This agreement was not acknowledged by either John B. Thomas, or the Thomas & Thompson Co., until the 21st day of March, 1917, and was never acknowledged at any time by Mrs. Kate Thompson, as Trustee. The appellant claims that the paper referred to is not a valid lease, because not in accordance with Section 1 of Article 21 of the Code. There is no allegation that the rent stipulated is inadequate, or that any of the conditions embodied are unjust or unfair to the appellant.

It is unnecessary to consider whether the paper was a valid lease for the original five-year term, from June 1st, 1910, to June 1st, 1915, for the reason that that term has fully expired, the rent been paid and accepted, and that question would at this time be purely academic.

All that this case can properly deal with, therefore, is as to the effect of Plaintiff's Exhibit No. 1 as creating a lease, or an agreement to lease, for the ten-year period beginning June 1st, 1915. That it does not comply with the provisions of the Code, *supra,* necessary to constitute it a valid lease, is perfectly plain. At the same time if the paper is adequate in other respects it may constitute a perfectly good agreement to enter into a lease in accordance with the terms set forth, an agreement such as a Court of Equity will specifically enforce.

Mention has already been made of the fact that this agreement, though signed by Mrs. Thompson, was never acknowledged by her. Mr. Thomas and Mrs. Thompson, as life tenant and trustee under the will of her husband, were tenants in common of the property. As such Mr. Thomas, of course,

had no right to bind the interest of his co-tenant by any lease of the premises. This situation might have been made a ground of defense by the appellant, but no stress was laid upon it, either in the argument before the Court or in the brief filed by her counsel. If there had been, it would have been a sufficient answer to say that the appellant by receiving the rental of $4,000 per annum, down to the time of the bringing of this suit, had ratified the agreement, for a ratification may be established by acts as well as by parole or by written agreement. See 7 *R. C. L.*, 877; *Pellow* v. *Arctic Iron Co.*, 164 Mich. 87, 47 L. R. A., N. S., 573, and elaborate note appended thereto; and *McDonald* v. *Finseth*, 32 N. D. 400, L. R. A. 1916, D. 149, in which a very able opinion was filed by BRUCE, J., reviewing nearly all of the authorities.

What actually took place in this case was a notice, dated December 2nd, 1916, from Kate Thompson, Trustee, to the Thomas & Thompson Company, to vacate the premises on the 31st May, 1917. This notice referred to the agreement, Plaintiff's Exhibit No. 1 already mentioned, and by inference ratified that agreement as a lease for five years, and then seeks to treat the appellee company as being a tenant holding over, and, therefore, a tenant from year to year. The communication of Mr. Boyd, which accompanied the notice, speaks of the agreement as a "supposed lease" for a period of fifteen years. The instrument to which this refers makes no mention of a term of fifteen years, that duration can only be arrived at by combining the two terms named therein, and for which terms the amount of rental payable was not the same.

This notice having been served, the appellee, on the 30th of April, 1917, filed the bill in this case, by the prayers of which the following relief was asked: An injunction against the appellant to restrain any proceedings at law for the recovery of the premises, and a decree for a specific performance

or execution of a lease, in conformity with the terms of Plaintiff's Exhibit No. 1.

The answer, after admitting a number of the allegations contained in the bill, relies mainly upon two grounds—first, that, under the terms of the will of her husband, Albert E. Thompson, she was without power to enter into such an agreement as that proposed; and the second ground of defense was as to the proper rule of law applicable to such cases.

The will of Mr. Thompson, in so far as it places a limitation on the power of his executrix and trustee to deal with the property, is as follows:

"I hereby confer upon my executrix, or her successor in charge of my estate, full power and authority for the purpose of changing the investments of my estate so left, or for the purpose of making division thereof, to sell and lease any part or all of the property so held, subject, however, to the approval of the Court."

The defendant claims that no authority of the Court having been given, such an agreement of lease as that now involved would be an *ultra vires* act. This, however, is a misconception of the plain intent of the testator. The approval of the Court was evidently intended to apply only to the sale of the property for the purpose of reinvestment, or a partition of the estate. The proposed agreement is neither; it looks only to obtaining a proper and adequate return from the estate, as it had been held by the testator without any reference to a change of investment or partition.

The legal requirements for the maintenance of a bill for specific performance have been so frequently repeated in this Court that it would be a work of supererogation to again recite them. They were tersely stated in *King* v. *Kaiser, supra,* when it was said: "To maintain a bill for specific performance it is requisite that the agreement, which the Court is asked to require to be performed, must be fair, just,

reasonable, *bona fide,* certain in all its parts, and made upon a good and valuable consideration."

Tested by these requirements, and the evidence given at the trial of this case, there is not an element lacking upon which to base a refusal of a decree such as that asked for.

Much of the contention at the trial of this case below grew out of an application for leave to amend the answer of Mrs. Thompson, as trustee, and the amendment desired was the insertion in that answer of the following language:

"And that at and before the time of the signing of the alleged lease she asked the said John B. Thomas if it was all right to sign the said paper, and he said, 'Kate, you know I would not ask you to do anything that was not right, and this paper is all right to sign,' and that in reliance upon the aforementioned intimate relationship between the said Thomas and herself and ignorant of the contents of said paper, and because of said statement from Thomas to her, she was fraudulently induced to sign the same."

The application for leave to amend was refused by the Court, and the correctness of that ruling has been sought to be raised in this Court.

In the case of *McKim v. Thompson,* 1 Bland, 162, the learned CHANCELLOR said: "It is with great difficulty permitted to a defendant to make any alteration in his answer, even upon a mistake, and there is no instance of its having been allowed for the purpose of retracting a clear and well understood admission. It should appear due to general justice to permit the issue to be altered."

The case is referred to by *Mr. Miller* in his work on *Equity,* in Section 189, and that author adds: "A special case must be shown to allow the amendment. Before the Court will permit the issue to be changed in this way, the defendant must show that it is due to justice that the amendment should be made."

The same doctrine was announced in *Williams* v. *The Savage Mnfg. Co.,* 3 Md. Ch. 418. Between these cases and the case of *Calvert* v. *Carter,* 18 Md. 108, there had been a modification in the phraseology of the section relating to amendments, and it was claimed in that case that the effect of the amendment had been to relax somewhat the strictness of the rule governing amendments to answers. That decision, however, sustained the prior rule, and went even further, holding in effect that the propriety of a proposed amendment lay in the discretion of the Court to which the application for leave to amend was made, and that no appeal lay from its action in regard thereto. This case was later followed in *Glenn* v. *Clark,* 53 Md. 602.

Without passing at this time upon the question of the right of appeal from an order refusing an amendment, there is another consideration which is necessarily controlling in this case. It is said by *Miller,* Section 94, that, "A bill must be consistent with itself and must not contain averments which are repugnant to each other." Manifestly that which is true of a bill of complaint in this respect applies with equal force to an answer. What, then, would have been the effect of permitting the amendment asked to be made? It would have placed the defendant in one part of her answer in the position of affirming an agreement, under which she had received the benefits, and in another, of repudiating it as null and void, *ab initio,* because of fraud in procuring her assent thereto.

It is difficult to conceive of any more diametrically inconsistent positions than a granting of the application to amend would have permitted the defendant to occupy. Nor is this all. This application was made to the Court after the defendant, Mrs. Thompson, had testified. In her evidence she was asked and answered as follows: "Q. What, if anything, was said to you by him about the signing of that paper immediately prior thereto? A. Nothing was said to me about the signing of the lease at all."

If the application for leave to amend had been granted, there would have been a direct conflict between the allegations of the answer and that to which the defendant had then testified.

It follows that, if it be assumed, though the question is not now decided, a refusal to amend answer may be made a ground of reversal in this Court, nevertheless the facts as shown by the record fully sustain the action of the trial Court, and the decree appealed from should be affirmed.

Specific objection has been made by the appellant to having imposed upon her the cost of the insertion in the record of certain exhibits, and, under the rule of this Court, 12A, the position is well taken. The cost of the insertion of the following exhibits will, therefore, be chargeable against the appellees: Plaintiff's Exhibit A, B, C, D, E, F and I.

> *Decree affirmed, costs to be paid by the appellant, except the costs of insertion in the record of Plaintiff's Exhibit A, B, C, D, E, F and I, the same to be ascertained and taxed by the Clerk of this Court.*