## DARLING SHOPS DELAWARE CORPORATION *v.* BALTIMORE CENTER CORPORATION

[No. 35, October Term, 1948 (Adv.)]

Decided July 20, 1948.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. Earle Cobey* and *C. William Gilchrist* for the appellant.

*Clarence Lippel* and *William Hoffenberg* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

On November 16, 1937, the Cumberland Realty Company, then the owner of Nos. 101-105 Baltimore Street, Cumberland, Maryland, executed what was purported to be a lease of a stock-room in these premises, to Darling Shops, Inc., of Delaware. This purported lease was in writing, and attempted to create a term of ten years, commencing February 1, 1938 and ending January 31, 1948, at an annual rental of $8500, payable in equal monthly instalments. The lease, however, was not executed, acknowledged or recorded as required by Article 21 of the Annotated Code, Section 1.

On May 9, 1940, by supplemental lease, also in writing, but not executed, acknowledged or recorded as required by the statute, the Cumberland Realty Company leased additional space in the premises to Darling Shops for a

term of seven years and nine months, commencing on May 1, 1940 and ending on January 31, 1948, at an annual rental of $1500, payable in equal monthly instalments. The terms in the two leases were timed to expire at the same date, January 31, 1948. The Darling Shops entered into the premises and paid the rent. In May, 1944, the Cumberland Realty Company conveyed the property to the appellee. The corporate name of the Darling Shops was changed to its present form, but the appellant here is the same corporation which entered into possession of the premises and has been in possession since.

On November 14, 1947, the appellee notified the appellant, in writing, that it would expect possession of the property on January 31, 1948. The appellant did not vacate and attempted to pay rent after January 31, 1948, which was refused. On February 2, 1948, the appellee brought summary proceedings before the trial magistrate in Cumberland, Maryland, to recover possession of the premises under the provisions of Article 53 of the Annotated Code. After trial, a judgment was entered for the appellant. The appellee appealed to the Circuit Court for Allegany County, and the appeal was heard upon stipulated facts. The Circuit Court reversed the action of the trial magistrate, and entered a judgment of restitution for the appellee on May 3, 1948. On petition by Darling Shops, assented to by Baltimore Center Corporation, we granted certiorari (Article 5, Section 104), it having been made to appear to us that it was in the public interest that the question should be decided by this Court, and that decisions by some of the nisi-prius courts were conflicting. (*State v. Depew,* 175 Md. 274, 1 A. 2d 626.)

The question at issue is whether the appellee is entitled to possession of the premises. This question involves the nature and kind of tenancy held by the appellant, and the requisite notice necessary to authorize a judgment of restitution under the provisions of Article 53 of the Annotated Code.

When a tenant is put in possession of property under a lease which is unenforceable under the statute of frauds, or which passes no estate for any statutory or other reason, he is, nevertheless, lawfully in possession and holds as some sort of tenant. The same thing is true of a tenant who goes into possession under a valid lease for a term of years, and remains over, with the consent of the landlord. At first, under the common law, it was held that in these situations the tenant was a tenant at will, who could be put out at any time by the landlord. This created great hardship on tenants, particularly those in agricultural districts, and, eventually, it was determined that such a tenant held from year to year, or from quarter to quarter, or from month to month, depending on the manner in which the rent was calculated in the void or unenforceable lease, or in the original lease for a term of years. Major Venable, in his *Law of Real Property and Leasehold Estates in Maryland,* page 60, states "Estates from year to year are a class of estates at will, from which they originated. The tenancy at will was early found to leave each party too much at the mercy of the other; and the courts seized on any circumstance which could be construed to indicate an intention to require a reasonable notice to terminate the tenancy (*Hall v. Hall,* 6 Gill & J. 386). In time it was held that six months' notice expiring at the period of the year at which the tenancy began was such reasonable notice; and this is still the law in Md."

It was necessary for the courts to go further, and to determine, not only the kind of tenancy thus established, but the terms on which such tenancy was held. The natural and reasonable conclusion was adopted that a tenant who went into possession under a void or unenforceable lease and paid the rent named in such lease, or who held over, after the expiration of a lease for a term of years, and thereafter paid the same rent as that named in the lease, intended to occupy the leased premises under the same terms and conditions, except for the fact that he was a tenant from year to year (or from

quarter to quarter, or from month to month), and that all the terms and conditions of the original lease, whether void, unenforceable or expired, carried over into the new renting, except that the tenancy was different, and that, during the term of the original unenforceable or void lease or after the original valid lease had expired, the tenant was entitled to the common law notice required to determine his new kind of tenancy. That seems to have been generally held everywhere, in England and in this country, with the possible exception of Minnesota where, in the case of *Johnson v. Albertson,* 51 Minn. 333, 53 N. W. 642, the Supreme Court of that state held that the original lease was void absolutely and had no effect, except that it regulated the amount of rent, and that the tenant was a tenant at will. That is entirely contrary to the many decisions of this Court. Such decisions are *Anderson v. Critcher,* 11 Gill & J. 450, 37 Am. Dec. 72; *Howard v. Carpenter,* 11 Md. 259; *Kinsey v. Minnick,* 43 Md. 112; *Emrich v. Union Stock Yard Co.,* 86 Md. 482, 38 A. 943; *Falck v. Barlow,* 110 Md. 159, 72 A. 678, 17 Ann. Cas. 538; *Hall v. Trustees of Sharp St. Station,* 155 Md. 654, 142 A. 508; *Cook v. Boehl,* 188 Md. 581, 53 A. 2d 555; *Smith v. Pritchett,* 168 Md. 347, 178 A. 113, 98 A. L. R. 212; *Saul v. McIntyre,* 190 Md. 31, 57 A. 2d 272; *Gostin v. Needle,* 185 Md. 634, 45 A. 2d 772, 163 A. L. R. 1013; *Hyatt v. Romero,* 190 Md. 500, 504, 58 A. 2d 899, 901. In the last mentioned case the Maryland law is stated as follows: "We hold that where a lease for a term of more than seven years has been executed but not recorded, and the lessee enters into possession of the premises and pays yearly rent, which is accepted by the lessor, the lessee is considered as tenant from year to year upon all the terms of the lease except as to duration."

Many of these cases arose by actions of ejectment, or by bills of complaint to restrain ejectment. Where one of the parties attempts, within the term of a void or unenforceable lease, to have such lease specifically enforced, this Court has held that it will be treated as an agreement to lease, and will be enforced. *Thompson v. Thomas*

& *Thompson Co.*, 132 Md. 483, 104 A. 49. This right, however, was not exercised in the present case by either party, each being apparently satisfied to continue the tenancies as from year to year. Had the agreements been specifically enforced, then the tenancies would have been for a term of years, terminating at the expiration of such terms, without notice. They were not specifically enforced, and, therefore, what we are concerned with is not a tenancy which the parties made for a term of years, but a tenancy which, by implication of law, is a tenancy from year to year. The question is, what notice, if any, must be given at the end of the last year of such tenancy to enable the landlord to repossess the property. The English decisions, which have been recognized in those few jurisdictions in this country in which the question has arisen, hold that the interest of the tenant expires, of itself, at the end of the term mentioned in the lease, although he is a tenant from year to year, and that the tenant is not entitled to have any notice to *terminate* the tenancy because he has that in the original, although void lease, which he signed. *Doe dem Tilt v. Stratton*, 4th Bing. 446, 130 Eng. Rep. 839, *Doe dem Davendish v. Moffatt*, 15 Q. B. 257, 117 Eng. Rep. 455, *Tress v. Savage*, 4 El. & Bl. 36, 119 Eng. Rep. 15, *Martin v. Smith*, 9 L. R. (Ex.) 50. *Reeder v. Sayre*, 70 N. Y. 180, 26 Am. Rep. 567; *Coudert v. Cohn*, 118 N. Y. 309, 23 N. E. 298, 7 L. R. A. 69, 16 Am. St. Rep. 761; *Arbentz v. Exley*, (*Watkins & Co.*), 52 W. Va. 476, 44 S. E. 149, 61 L. R. A. 957; *Ray v. Blackman*, 120 Mo. App. 497, 97 S. W. 212; *Taylor on Landlord and Tenant*, 9th Ed., Vol. 1 page 103, paragraph 80, *Tiffany, Landlord and Tenant*, Vol. 1, page 382, Section 65. In a case in Illinois, however, where there was a lease, void under the statute of frauds, no notice was given before the termination of the tenancy for years provided in the lease. The Court did not follow the English cases, but applied an Illinois statute which provided that in all cases where there was a lease or contract, such lease should be deemed sufficient notice of the termination of the tenancy, and

no other notice was necessary. The court said the holding was a tenancy from year to year ordinarily requiring sixty days notice to terminate, but the special statute was held controlling. *Knecht v. Mitchell,* 67 Ill. 86. These cases were deciding the time of termination of a tenancy when the landlord might properly bring an action of ejectment, or an action for rent if the tenant left the premises before the term had expired. They did not involve statutory notices to enable the landlord to exercise a summary remedy, which is a question we have in the case before us.

The appellee contends that, since no notice is necessary to determine the tenancies here involved, under the English and other decisions above referred to, it is in the same position with respect to notice as if the lease had been valid. That is, it does not have to give any notice to *terminate* the tenancy *at the end of the last year.* It also claims that the tenancy during its last year should be treated in the same manner as if it were a tenancy for years, and, therefore, it had to give only 30 days notice to enable it to take advantage of the summary remedy provided by Article 53. It did give such notice, and, therefore, contends that it was entitled to possession of the property on January 31, 1948, and that the decision of the court below was correct.

In the early English case, *Doe dem Tilt v. Stratton, supra,* decided in 1828, Sergt. Jones arguing for the defendant, contended that his client was a tenant from year to year, might have been said to hold under the terms of the lease as to rent, repairs, etc., yet if the lease were never executed, he must hold subject to all incidents of a tenancy from year to year, and would only so far be bound by the terms of the lease, including the date of its termination as was compatible with such incidents. This argument was rejected by the court on practical grounds. All that was said was "We should multiply notices to quit unnecessarily if we held this action did not lie. Within the seven years the defendant could not have been turned out without notice; but at the end of

the seven years the contract itself gives him sufficient notice." No better reason has been given in any of the adjudicated cases to which we have referred, and it is likely that this conclusion of the English court has been followed because of precedent rather than of sound logic. It would seem sensible to find that since the tenant holds from year to year, he holds the same way during the entire period in which he remains on the premises, and that in order to terminate his tenancy the same notice would have to be given him in the last year as in any other year. The Illinois case of *Knecht v. Mitchell, supra,* indicates that a 60 day notice, the requirement in Illinois to terminate tenancies from year to year, would have to be given were it not for the special law of that state, which is a statutory enactment of the English rule.

In Maryland we have had, by statute, for many years, a method for repossessing property by a summary proceeding before a justice of the peace. These provisions are codified in Article 53 of the Code. They provide that where there is a lease for a definite term, the lessor must give notice in writing one month before the end of the term and if compliance is not made, then the landlord may file a complaint before the justice of the peace and further proceedings may be taken which will enable the landlord to repossess the property. It was formerly provided that in cases of tenancies from year to year in the counties, six months' notice must be given, but this has now been changed by the Act of 1943, Chapter 842, so that the notice in tenancies from year to year in the counties is fixed at three months, except in the case of farm tenancies which remain at six months. (See also Act of 1945, Chapter 100.)

In *Venable, Law of Real Property* etc. it is stated on page 62, "At common law no notice was necessary to terminate a tenancy for a fixed period (estate for years) or a tenancy at sufferance; but a notice to quit by the landlord, or of an intention to quit by the tenant, terminated tenancies at will, from year to year, month to month, or week to week. A notice *intended to determine*

*the tenancy* should not be confounded with a notice which *entitles the landlord to repossess* himself of the premises by a *summary remedy*. This last is entirely the creature of statute law." (The emphasis is that of Major Venable.) For convenience he inserted a table which showed the notices necessary to determine a tenancy, and the notices necessary to give the landlord a remedy by summary proceedings. For estates for years in the counties, no notice was necessary to terminate the tenancy, but one month's notice, in writing, was necessary to give the landlord a remedy by summary proceedings. In estates from year to year, six months' notice was necessary to determine the tenancy, and six months' notice was necessary for the summary proceedings. As we have shown, this last period has now been reduced to three months for the kind of tenancy we are concerned with here. The notices in Baltimore City are different, and we will not attempt to distinguish them in this case.

We are, therefore, confronted in this case by an additional question, which is the necessity of giving the statutory notice which must precede the use of the summary remedy. Even if we should be disposed to follow the English rule and hold that no notice is necessary to terminate the tenancies in the last year, we cannot disregard the notice required by the statute to be given before the summary remedy can be used. Under our decisions, the tenancy up to and including the last year, provided by the void or unenforceable lease, is a tenancy from year to year, and the statute clearly requires that in such a tenancy, before the landlord can avail himself of his summary remedy, he must give three months' notice before the end of the year. There is no exception in our statute as in the Illinois statute, and if we were to hold that only a thirty day notice would have to be given because of the end of the term fixed by the void lease, we would be going a step further than any of the cases have yet gone. We would have to hold, not only that this was a tenancy from year to year, which terminated without notice at the end of the last year provided by

the void lease, but we would also have to hold that during the last year it was not a tenancy from year to year at all, but was a tenancy for a year, that is, for a fixed term, and therefore only the notice necessary for such a tenancy would have to be given. To make such a holding, we would have to find the authority in the void lease, which, under our decisions, can be used merely as evidence of the incidents of the holding, and does not affect the nature of the tenancy. We would, therefore, be saying, in effect, that while the lease is void and unenforceable, and the tenant by operation of law holds from year to year, nevertheless, the lease is valid during the last year to create a tenancy for years. This no case has decided. Nor could this be held without creating a confused situation, which would have no basis either in common sense, or in law, to uphold it. All that the English and other cases have held is that the termination is one of the incidents of the void lease which carries over to the tenancy from year to year, and, therefore, the tenants from year to year have notice in the last year from the lease that the tenancy from year to year expires at the end of that year. None of the cases have held that in the last year the tenant holds by a different kind of a tenancy from that implied in the preceding years.

Since the tenant in this case did not receive notice on either lease, three months before January 31, 1948, on which date both leases, by their terms, expired, the landlord was not entitled to the judgment for the restitution of the possession of the premises which it obtained in the Circuit Court for Allegany County. That judgment, therefore, will have to be reversed.

*Judgment reversed with costs.*

MARKELL, J. (dissenting).

I agree with the opinion of Judge George Henderson in the lower court. As he says, the precise question has not been decided in Maryland. However, both his opinion and the opinion of this court show that "the English

decisions, which have been recognized in those few jurisdictions in this country in which the question has arisen," hold that the interest of the tenant expires at the end of the term mentioned in the lease, although he was formerly a tenant from year to year, and that he is not entitled to notice to terminate the tenancy. I see no reason for departing from these English and American authorities. Among them *Coudert v. Cohn*, 118 N. Y. 309, 23 N. E. 298, 7 L. R. A. 69, 16 Am. St. Rep. 761 and *Taylor on Landlord and Tenant* were cited (not on the precise question now presented) in *Falck v. Barlow*, 110 Md. 159, 164, 72 A. 678, 17 Ann. Cas. 538, the leading Maryland case (not the earliest) in which the law regarding unrecorded leases is discussed on reason and authority. For obvious and weighty reasons recording laws, designed for the protection of third persons, have been given no more effect between the parties—often less—than the Statute of Frauds, designed for the protection of parties to contracts. At law a mortgage or deed of trust of after-acquired property is "void," but in equity it creates a lien good between the parties and also against third persons with notice. *Diggs v. Fidelity & Deposit Co.*, 112 Md. 50, 72, 75 A. 517, 20 Ann. Cas. 1274. In the course of a century almost every railroad in the United States several times, besides countless other business corporations, has gone through foreclosure or reorganization in which the "equitable lien" of its bond issues (often secured by leases) has been recognized practically as if there were no recording laws.

To call an unrecorded lease "void" is an oversimplication, which in the instant case works injustice. As the opinion of this court shows, this court in the very last case on the subject (*Hyatt v. Romero*, 190 Md. 500, 58 A. 2d 899), and in several others, some recent, has held that an unrecorded lease may be specifically enforced as a contract to lease. Honest men perform their contracts without being compelled to do so. In the instant case the lessor and its assignee, on a rising market, performed their ten-year lease contract. They should not be penal-

ized for having done do. Judge Boyd once said in a divorce case, *"We* cannot decree that they live together; but *they* can." *McCaddin v. McCaddin,* 116 Md. 567, 575, 82 A. 554, 557. In the instant case either the court or the parties could have decreed specific performance; the parties did so. The lessor's position should be no worse than if the court had decreed specific performance against him.

What notice was necessary to entitle the landlord to the summary remedy for possession is a narrow question of statutory construction. As soon as the time had expired (on November 1, 1936) within which either party could have given notice of termination of the tenancy from year to year at the end of the ninth year, the ten-year contract to lease had been fully performed by the parties. After that date the property may fairly be said, within the meaning of the statute, to have been "leased for any definite term" (Art. 53, sec. 1), *e. g.,* for ten years by an unrecorded lease, voluntarily performed by the parties—or for the remaining fifteen months or the last full year.