NIEMOTKO *v.* STATE
KELLY *v.* STATE

[Misc. No. 1, October Term, 1949.]

*Decided January 11, 1950.*

Before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hayden C. Covington* and *Henry Jaffe* filed petitions for the petitioners. No appearances were entered. No briefs were filed. No arguments were made.

MARBURY, C. J., delivered the opinion of the Court.

Separate petitions have been filed in this Court for writs of *certiorari* to review convictions and judgments of the Circuit Court of Harford County in two cases appealed from trial magistrates' decisions. One case is against Daniel Niemotko, and the other against Neil W. Kelley. The facts are identical in each case. Each petitioner was charged with the same offense. Each was convicted of disorderly conduct before the trial magistrate and fined $50 and costs. Each appealed to

the Circuit Court, and was tried before a jury which found him guilty. A fine of $50 and costs was imposed upon each of the petitioners by the Court, and it is these judgments we are asked to review. The petitions are filed under the provisions of Article 5, Section 104 which authorizes such a petition in any case, civil or criminal, in which a final judgment has been rendered by the Circuit Court of any county or by one of the courts of Baltimore City upon appeal from a Justice of the Peace if it shall be made to appear to us that a review is necessary "to secure uniformity of decision, as where the same statute has been construed differently by the courts of two or more Circuits, or that there are other special circumstances rendering it desirable and in the public interest that the case should be reviewed." This section has been used in *State v. Depew*, 175 Md. 274, 1 A. 2d 626, and *Darling Shops v. Baltimore Center Corp.*, 191 Md. 289, 60 A. 2d 669. In both of these cases the question raised was an erroneous construction of law, and a representation that conflicting decisions had been made throughout the state on the questions involved. The latter allegation is not made in the petitions before us.

The facts stated in the petitions are that the petitioners are ordained ministers of the Gospel and members of the sect known as Jehovah's Witnesses. They were invited by a congregation of that sect in Havre de Grace, Maryland, to give a public talk upon a Bible subject, Niemotko, on June 26, 1949, and Kelley on July 3, 1949. Niemotko had been informed that the City Council of Havre de Grace had refused to allow Jehovah's Witnesses to hold the assembly in the Park. When he arrived there, a number of policemen were present, and the Chief of Police advised him that if he attempted to talk he would be arrested. He did start to talk, was allowed to continue for ten or fifteen minutes, and then was arrested. The charge against him was laid under the disorderly conduct statute, Section 131 of Article 27.

Kelley appeared on the following Sunday with knowledge of the arrest of Niemotko, and was likewise in-

formed by the Chief of Police at the Park that if he attempted to talk he would be arrested. Previous to these meetings the local Congregation of Jehovah's Witnesses had requested the City Council for permission to use the park for four consecutive Sundays. After a hearing before the Council on June 20, 1949, this application was denied and Jehovah's Witnesses thereupon delivered the Council a written letter stating that they would use the park, because, in their opinion, any prohibition against such use was in violation of the decisions of the Supreme Court of the United States.

The questions which the petitioners wish us to review are stated as follows:

(1) Does the making of a speech to a peaceable public assembly in a public park without a permit from the City Council of Havre de Grace and contrary to the order of the Chief of Police constitute disorderly conduct in violation of Section 131, Article 27 of the Code of Public General Laws of Maryland?

(2) Does the undisputed evidence show that there was no violation of Section 131, Article 27 of the Code of Public General Laws of Maryland?

(3) Do the verdict and judgment rendered against the petitioner in the court below abridge the petitioner of his right to freedom of speech, freedom of assembly, freedom of worship and freedom of conscience, contrary to the First and Fourteenth Amendments to the United States Constitution and the Declaration of Rights of Maryland?

(4) Did the trial court commit egregious reversible error in denying petitioner the right to examine the prospective jurors on *voir dire* as to prejudice and knowledge of the case so as to intelligently exercise his peremptory challenge and to ascertain the existence of grounds warranting challenges for cause?

(5) Did the trial court commit egregious reversible error in excluding evidence and testimony offered by the petitioner and by unduly limiting petitioner's right to cross-examine the witnesses for the prosecution?

(6) Did the trial court commit egregious reversible error in allowing the prosecutor to argue erroneous statements of law to the jury and in denying counsel for the petitioner the right to make and to complete his objections to such arguments?

(7) Did the trial court commit reversible error in overruling the motion for dismissal of the prosecution and for a judgment of acquittal?

(8) Did the trial court commit reversible error in overruling the motion for directed verdict of "not guilty"?

(9) Did the trial court commit reversible error in overruling the motion for judgment notwithstanding the verdict?

(10) Did the trial court commit reversible error in overruling the motion for new trial?

(11) Did the trial court commit egregious and reversible error in rendering a judgment of conviction upon the verdict of the jury?

These questions require us to review the evidence in a case heard before a jury, and also to review the conduct of the trial court in refusing motions for directed verdicts of not guilty, motions directing verdicts of acquittal, motions for judgments n.o.v., in overruling motions for a new trial, and in entering judgments upon the verdicts. It has, of course, been many times decided by this Court that since by Article 15, Section 5 of the Constitution of this State, the jury are the judges of law as well as of fact in the trial of all criminal cases, the courts cannot review the evidence or instruct the jury on the law, except in an advisory capacity. *Wheeler v. State,* 42 Md. 563, 569.; *Broll v. State,* 45 Md. 356, 359; *Abbott v. State,* 188 Md. 310, 52 A. 2d 489; *Herring v. State,* 189 Md. 172, 55 A. 2d 332. If these petitions were granted we would, therefore, be unable to determine whether the facts proven showed a violation of the disorderly conduct statute, and we cannot find from the petition that the application of the statute to the facts by the jury was in violation of the decisions of the

Supreme Court. In this State the *nisi prius* court (in this case the Circuit Court for Harford County) is the final judge of the sufficiency of the evidence in any criminal case by its action upon a motion for a new trial. This motion has been made and denied, and it is not reviewable here. *Snyder v. Cearfoss,* 186 Md. 360, 46 A. 2d 607; *Winkler v. State,* 194 Md. 1, 69 A. 2d 674.

In this State we have no practice of motions for a judgment of acquittal, motions for a directed verdict of not guilty, or motions for judgment *n.o.v.* in a criminal case. All the other points raised involve matters affecting the conduct of the trial, which are largely in the discretion of the trial court. They are not matters of public interest which make it desirable for us to review the cases under Article 5, Sec. 104, and we do not think they are the type of cases which that section is intended to cover.

For these reasons, both petitions will be denied.

MARKELL, J., filed the following concurring opinion.

If the facts alleged in the petitions are supported by the records (which are not before us), petitioners' rights under the Constitution of the United States of freedom of worship, freedom of speech and freedom of assembly have been wantonly violated and completely flouted by the municipality of Havre de Grace and by the Circuit Court. *Lovell v. City of Griffin,* 303 U. S. 444, 58 S. Ct. 666, 82 L. Ed. 949; *Hague v. C. I. O.,* 307 U. S. 496, 59 S. Ct. 954, 83 L. Ed. 1423; *Schneider v. New Jersey (Town of Irvington),* 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155, and many subsequent cases. Rectification of such outrages would be the most compelling "special circumstances rendering it desirable and in the public interest that the cases should be reviewed."

However, so long as this court adheres to its position that Maryland criminal procedure—or lack of procedure—is supreme over the Constitution of the United States, (*Winkler v. State,* 194 Md. 1, 69 A. 2d 674) review of these cases by this court would result not in rectification

of outrages, but in frustration. Petitioners would still be forced to go to the Supreme Court for enforcement of their constitutional rights which this court refuses to enforce when the facts have been covered by a false label in manner sanctified by Maryland practice. As petitioners have no right of appeal to this Court in these cases, denial of discretionary review by *certiorari* will leave them free to go direct from the Circuit Court to the Supreme Court by appeal or application for *certiorari,* thus saving them the delay and expense of futile review in this Court. Solely to expedite petitioners' quest for justice and vindication of their constitutional rights I concur in the denial of *certiorari* in these cases.